CORDELIA E. HINZEMAN, now MILLS, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Division One, October 19, 1906.

1. NEGLIGENCE: Man on Railroad Track: Warning. An engineer who could have seen a section foreman on the track and apparently unconscious of his danger, for 300 feet before the engine struck him, should have given timely alarm signals, and failure to do so was negligence for which the company must respond in damages.

2. ———: ———: ———: Failure to Sound Alarm Signal. The fact that the engine bell was rung for a long distance before deceased was struck, will not excuse defendant's failure to warn by an alarm whistle a man on the track apparently oblivious to danger. Under such circumstances the ringing of the bell alone is not ordinary care, and it is proper for the court to tell the jury that the failure to sound the alarm whistle is negligence.

3. ———: First Remark on Recovering Consciousness: Res Gestae. The first remark of a section foreman on recovering consciousness, after being struck by a train while he was at work

on the track, was the question, "What hit me?" *Held,* that it was competent as *res gestae,* and potent as showing that he had no knowledge or notice of the oncoming train which struck him while he was at work on the track.

4. ————: **Insufficient Evidence: Former Adjudication.** Where the court on the former appeal held there was sufficient evidence that deceased's death was due to defendant's negligence, to take the case to the jury, that holding should be adhered to on a subsequent appeal if the case comes up on substantially the same facts and the same issues in the same pleadings.

Appeal from Henry Circuit Court.—*Hon. C. A. Denton,* Judge.

AFFIRMED.

*R. T. Railey* with *Martin L. Clardy* for appellant.

(1) The deceased, as shown by the undisputed facts, was not only guilty of negligence directly contributing to his own death, but was guilty of inexcusable recklessness. He had been an old, experienced section man. He had a time card, which informed him that the Joplin passenger train was due to leave the Union Station at 8:10 a. m. and was due to arrive at Southwest Junction at 8:25. This train passed by every morning at the same hour. It was on time the morning of accident. Deceased had a watch and was required to keep correct time. It was his duty to keep himself informed as to the running of trains on schedule time, and to obstruct said trains as little as possible. The train in controversy was compelled to, and did, whistle for the semaphore about one quarter of a mile west of where deceased was killed. The bell was usually rung from Union Station to Southwest Junction. The undisputed facts disclose that on the morning of accident the bell was ringing continuously from the time the train passed over Milwaukee crossing, until deceased was killed. The track from Milwaukee crossing up to scene of accident was

practically straight and comparatively level. It was a clear day and the two tracks where deceased had been walking were nine feet apart. If the testimony of Wilson be true, that deceased was standing with his face toward the track, and the train coming at right angles to him, with his body outside of the rails, then how could it be possible for him to have been injured under such conditions, if he had had even the slightest regard for his own safety? The court below should have directed a verdict in favor of defendant upon the admitted facts in regard to deceased's contributory negligence. Schmidt v. Railroad, 90 S. W. 136; Hinzeman v. Railroad, 182 Mo. 620; Ries v. Railroad, 179 Mo. 7; Evans v. Railroad, 178 Mo. 508; Koons v. Railroad, 178 Mo. 591; Moore v. Railroad, 176 Mo. 528; Zumault v. Railroad, 175 Mo. 288; Van Bach v. Railroad, 171 Mo. 338; Roberts v. Tel. Co., 166 Mo. 370; Hook v. Railroad, 162 Mo. 569; Sharp v. Railroad, 161 Mo. 214; Tanner v. Railroad, 161 Mo. 497; Davies v. Railroad, 159 Mo. 9; Holwerson v. Railroad, 157 Mo. 223; Peterson v. Railroad, 156 Mo. 555; Coatney v. Railroad, 151 Mo. 48; Culbertson v. Railroad, 140 Mo. 64; Vogg v. Railroad, 138 Mo. 180; Sinclair v. Railroad, 133 Mo. 245; Watson v. Railroad, 133 Mo. 246; Lane v. Railroad, 132 Mo. 4; Loring v. Railroad, 128 Mo. 360; Maxey v. Railroad, 113 Mo. 1; Ring v. Railroad, 112 Mo. 229; Boyd v. Railroad, 105 Mo. 371; Barker v. Railroad, 98 Mo. 53; Powell v. Railroad, 76 Mo. 80; Purl v. Railroad, 72 Mo. 168. (2) The undisputed facts fail to show that defendant's servants were guilty of wanton, willful or reckless conduct, and by reason thereof the cause should be reversed, without remanding. Schmidt v. Railroad, 90 S. W. 136; Markowitz v. Railroad, 186 Mo. 359; Evans v. Railroad, 178 Mo. 508; Koons v. Railroad, 178 Mo. 591; Moore v. Railroad, 176 Mo. 528; Carrier v. Railroad, 175 Mo. 470; Guyer v. Railroad, 174 Mo. 344; Van Bach v. Railroad, 171 Mo. 338; Tan-

ner v. Railroad, 161 Mo. 497; Sharp v. Railroad, 161
Mo. 214; Davies v. Railroad, 159 Mo. 9; Holwerson v.
Railroad, 157 Mo. 223; Coatney v. Railroad, 151 Mo.
48. It was his duty to know of its approach, and what-
ever a person can learn in the exercise of ordinary care,
it is in law the same as though they had actual know-
ledge of the facts. Taaffe v. Kelly, 110 Mo. 137; Jack-
son v. Railroad, 104 Mo. 459; Mason v. Black, 87 Mo.
342; Johnson v. Ashland W. Co., 77 Wis. 54; Muldow-
ney v. Railroad, 39 Iowa 620; Ring v. Railroad, 112
Mo. 220; Loring v. Railroad, 128 Mo. 359; Sharp v.
Railroad, 161 Mo. 235. (3) Plaintiff's instruction 1
is radically wrong in several respects: (a) It authoriz-
ed the jury to return a verdict for the plaintiff if the
whistle was not sounded before deceased was killed,
although the latter knew the train was coming before
he was struck. The only purpose in sounding the
whistle is to inform the person on or close to the track
that the train is approaching. The instruction au-
thorized a recovery if the whistle was not sounded,
although deceased may have known of its approach,
and that, too, regardless of his negligence and reckless-
ness in failing to remove to a place of safety. This was
clearly erroneous. Hutchinson v. Railroad, 161 Mo.
253; Murray v. Railroad, 176 Mo. 188. (b) The peti-
tion herein is not based upon any statute, but is purely
a common law action. What right had the court to
arbitrarily tell the jury—as in this case—that the
whistle should have been sounded although the bell was
being rung at the time; and although deceased knew
the train was coming, in time to have moved into a
place of safety? What statute required even the bell
to be rung, much less a whistle sounded? It is our
understanding of the law that an instruction based up-
on common law negligence could only go to the ex-
tent of informing the jury that it was defendant's duty
in operating its train at time and place of accident to

exercise ordinary care, or such care as an ordinarily careful and prudent railroad man would have exercised under the same circumstances. Vandewater v. Railroad, 135 N. Y. 583; Austin v. Railroad, 14 N. Y. Supp. 924; Railroad v. Greer, 69 S. W. 422; Railroad v. Pugh, 32 S. W. 312; Swift v. Railroad, 123 N. Y. 649; Byrne v. Railroad, 104 N. Y. 368; Railroad v. Talbot, 67 N. W. 601; Rowen v. Railroad, 21 Atl. 1074; Artz v. Railroad, 34 Ia. 153; Brown v. Railroad, 22 Minn. 171; Stoneman v. Railroad, 58 Mo. 505; Holman v. Railroad, 62 Mo. 563; Maxey v. Railroad, 113 Mo. 1; Barron v. L. & Zinc Co., 172 Mo. 234; Warner v. Railroad, 178 Mo. 133; Ayers v. Railroad, 88 S. W. 610; Theobald v. Railroad, 90 S. W. 366. Even under the statute, at public crossings the defendant is not required to both blow the whistle and ring the bell. Sec. 1102, R. S. 1899. The uncontradicted evidence discloses that the bell was rung from Milwaukee crossing continuously up to the time of accident.

*O. L. Houts* and *Charles E. Morrow* for respondent.

(1) The failure to exercise ordinary care is actionable negligence. The act need not be either willful, wanton or reckless. Hinzeman v. Railroad, 182 Mo. 611. This same proposition on the same record was decided against appellant in this case when it was here before, and no reason appears why the rule of law then announced should be discarded now. It is the law of this case. It is *res adjudicata.* Overall v. Ellis, 38 Mo. 209; Chapman v. Railroad, 146 Mo. 481; Baker v. Railroad, 147 Mo. 140; Bealey v. Smith, 158 Mo. 515; Carey v. West, 165 Mo. 452; Butler County v. Boatmen's Bank, 165 Mo. 456; Taussig v. Railroad, 186 Mo. 269. (2) The demurrer to the evidence was properly overruled. The plaintiff made a case. This court on the same record so held on a former appeal. Hinzeman

v. Railroad, 182 Mo. 611. This is also *res adjudicata.*
(3) Instruction 1 given for plaintiff properly declared
the law. It was taken from the books and has been
often approved. Reyburn v. Railroad, 187 Mo. 565;
Klockenbrink v. Railroad, 172 Mo. 678; Morgan v.
Railroad, 159 Mo. 262; Baird v. Railroad, 146 Mo. 265;
Reardon v. Railroad, 114 Mo. 384; Chamberlain v.
Railroad, 133 Mo. 587; Guenther v. Railroad, 108 Mo.
18; Kellny v. Railroad, 101 Mo. 67. The law of this
instruction was passed upon by the court when this
case was here before, and is the law of this case.
Hinzeman v. Railroad, 182 Mo. 611. The contributory
negligence of the deceased is no defense to the humani-
tarian rule or last chance doctrine. The doctrine itself
presupposes the negligence of the deceased. Klocken-
brink v. Railroad, 172 Mo. 678; Kellny v. Railroad, 101
Mo. 67; Morgan v. Railroad, 159 Mo. 262; Jett v. Rail-
road, 178 Mo. 673; Reyburn v. Railroad, 187 Mo. 565.
This question was also decided by this court in this
case, and is *res adjudicata.* Hinzeman v. Railroad, 182
Mo. 611. Of course, there can be no such thing as con-
tributory negligence to the last negligence, which is the
proximate cause of the injury. Defendant adopted this
theory at the trial and cannot complain. (4) The
court did not err in admitting the statement of the de-
ceased, "What hit me?" Hinzeman v. Railroad, 182
Mo. 621; Leahy v. Railroad, 97 Mo. 165; State v. Hud-
speth, 150 Mo. 27; State v. Lockett, 168 Mo. 486; State
v. Hudspeth, 159 Mo. 178; Chapman v. Railroad, 146
Mo. 481; Railroad v. Burk, 116 Ind. 566; Redmond v.
Railroad, 185 Mo. 11; Adams v. Railroad, 74 Mo. 556.

LAMM, J.—This is an action to recover $5,000
for the death of plaintiff's husband, Joseph Hinzeman,
on the 2nd day of October, 1900, he being defendant's
section foreman, having in charge a section near Kan-
sas City, and killed while in the line of duty. He and

his gang of men were at work reconstructing defend-
ant's roadbed, *i. e.,* removing bad ties and replacing
them with sound ones.   Hinzeman, it seems, assumed
the service of going ahead of his men and marking
defective ties with a pick, and was engaged in marking
a tie when he was struck and killed by an east-bound
locomotive pulling a passenger train and running on
schedule time at, say, twenty-five miles an hour in day-
light on an unobstructed level track and clear day.   He
had good eyes, good ears and was a trackman of ex-
perience.   His widow, Cordelia E. Hinzeman, brought
suit, and was cast on trial to a jury.

The cause was here once before on defendant's ap-
peal from an order granting plaintiff a new trial.   At
that trial, the following instruction was given for de-
fendant:

"Unless the jury believe from the greater weight
of the evidence that the defendant's engineer in charge
of the locomotive which struck the deceased, willfully,
wantonly or recklessly ran deceased down and killed
him, your verdict must be for the defendant."

The trial court, having reconsidered its action in
giving that instruction, sustained plaintiff's motion for
a new trial; and here, on review, that ruling was ap-
proved—the case being reported in full, Hinzeman v.
Railroad, 182 Mo. 611.

The cause was originally tried in the circuit court
of Johnson county, but, when sent below, was removed
by change of venue to the circuit court of Henry county
and re-tried on January 23, 1905, resulting in a verdict
for plaintiff in the sum of $5,000—defendant again
appealing.

The petition was amended at the second trial to
show that plaintiff had intermarried with one Mills.
As we see it, the former answer was refiled and the for-
mer testimony, as preserved in the bill of exceptions,
was read to the second jury, supplemented by oral

testimony tending to impeach the credibility, and disturb the weight due to the testimony, of plaintiff's witness, Wilson.   This case, therefore, having been tried the second time on the same paper issues and substantially on the same evidence, supplemented by oral proof tending to break down plaintiff's principal witness, it would do no good to restate the facts, provided we remain satisfied they were fully and fairly stated before.   We have, accordingly, examined the original opinion and the record, then and now before us, and, as a result, readopt the statement of the case there made, *in extenso,* by VALLIANT, J.   That opinion must, therefore, be read with this.

Some of the evidence tended to show Hinzeman had been marking ties as he went east on the track—the train approaching him from behind.   Some of it tended to show he was walking east between two railroad tracks with a pick on his shoulder  and suddenly veered and approached the rail, bent over it and delivered a blow with his pick upon a tie so immediately before the coming engine that, though seen in peril by the engineer and fireman, it was too late to save his life. All the evidence indicates he was seen by the engineer and fireman for several hundred feet.   Defendant's evidence indicates that, when so seen, he was out of danger and turned from the course he was holding and placed himself in danger when his injury could not be avoided.   Plaintiff's evidence was somewhat the other way.   In this condition of things the former opinion laid some stress upon the pick marks on ties west of where Hinzman was killed as indicating his presence on the track and in danger for some distance, and it is now warmly insisted that these pick marks had been placed on these ties the day before, and that there was no substantial evidence of the marking of these ties by Hinzeman on the day he was killed and, therefore, says appellants' learned counsel, the opinion is

in fault in its statement of facts and, hence, the conclusion drawn was erroneous. But we do not find it so. To the contrary, there was evidence sustaining that finding of facts by plain inference. And not only so, but if Wilson's evidence be true, then Hinzeman was bent over the rail and in danger while the train ran 300 feet. So that, it makes little difference whether he had been on the track marking ties before he marked the fatal one, or not. And it makes little difference whether he had been going outside the track, and from time to time bent over the rail engaged in his labor of marking unsound ties for some distance west on the day he was killed. Because if he approached the rail for the first time at the moment he was killed and remained in danger there in the performance of his duty, as Wilson says, while the train ran 300 feet, the same conclusion must be arrived at, to-wit, that the engineer who saw him in peril and apparently unconscious of it, should have given timely alarm signals.

Respondent asked but one principal instruction and that was based on the hypothesis that the duty of defendant was to warn him by an alarm whistle. The significance of this will be seen when it is stated there was evidence tending to show the bell had been ringing for a long distance. Appellant now contends it was error for the court to predicate negligence on a failure to blow a whistle under the facts and circumstances surrounding the case. In other words, that the ringing of the bell, if one was rung, came up to high watermark as ordinary care. Of this contention, it may be said that the same instruction was here on the former appeal and came within the reasoning then employed. While it is not set out in full in the former opinion, yet, in discussing one of defendant's instructions, we said this: ''That instruction is also erroneous in this, it seems to limit the duty of the defendant in the emergency named to stopping the train, and says that if

when the peril was discovered it was then too late to stop the train the defendant is not liable.  That leaves out of view the duty of sounding the whistle, which under the plain evidence was an obvious duty.''  So that, the duty of defendant to sound the whistle, under the facts in judgment, has heretofore been adjudicated. Why should that not be an indicia of ordinary care? The whistle was there, in going order, and could be blown instantly.  The blowing of a locomotive whistle is the ordinary and usual means of giving a sharp alarm, the steam was there to blow it, the lever was there to operate it, and the man was there to pull the lever and open the throttle.  Is it an unreasonable and unfair requirement, then, as matter of law, if it be held that the whistle should be used if possible, when life is at stake? We think not.  The monotonous stroke of a bell may be one thing; the incisive, ear-splitting scream of a whistle, a signal known to man and beast as performing the office of an ''alarm signal,'' is another.  Under given circumstances, a bell might suffice —under other circumstances a whistle is ordinary care. [Chamberlain v. Railroad, 133 Mo. l. c. 604; Eppstein v. Railroad, 197 Mo. 720.]  Furthermore, defendant asked no instruction based on the ringing of the bell and may not complain of mere non-direction.  In Chamberlain v. Railroad, *supra,* the court approved of an instruction which said, in effect, that the stopping of a train was but ordinary care under given circumstances.  If the locomotive bell be ringing and one is in danger, plainly oblivious to that danger (as Hinzeman was), and the inefficiency of the stroke of the bell to alarm him is apparent (as here), why may not the court tell the jury as a matter of law that under such circumstances a failure to use the whistle was negligence?

The learned counsel for appellant doubt the

soundness of the former opinion in so far as it laid stress on the first questioning remark of Hinzeman on returning to consciousness after he was struck, to-wit, "What hit me?" The office given that remark by this court was that it was competent and potent as tending to show Hinzeman had no knowledge or notice of the oncoming train. We remain satisfied with the significance we attached to that remark. It was made on the spot and in the presence of the witnesses to the transaction. His mind apparently took up the thread of his life precisely at the point it was broken when struck by the locomotive and the first instinctive and spontaneous inquiry was, "What hit me?" That meant he did not know. The exclamation was part of the *res gestae* and, therefore, was properly admitted and is lodged in the case for what it is worth.

In the former case it was persistently urged over and over again, with a wealth of argumentation and citation of authority (contended to be in point), that there was no case to go to the jury. We said then there was a case to go to the jury. Having said so once, should we not say so twice? Having sent this case down to be retried on that theory, it would be palpably unjust to plaintiff to speak with two voices and now say to her, you have no case — unless, indeed, we are constrained to that course from a sense of judicial propriety arising from a re-examination of the record and a doubt of our former comprehension of the facts and application of legal principles. With high confidence it is asserted that we should change our judgment. Accordingly, we have gone over this record to see upon what the confidence of learned counsel is based and we find nothing to disturb our original conclusion. Having been once here on substantially the same facts and the same issues in the same pleadings, the law then declared should be considered (and remain) the law of this case under the doctrine of *res adjudicata*.

The judgment is, accordingly, affirmed.

All concur, except *Graves, J.*, who had been of counsel below.