O. A. KIPPENBROCK v. WABASH RAILROAD COMPANY, Appellant.

Division One, March 30, 1917.

1. **NEGLIGENCE: Notice of Dangerous Situation: Crossing Tracks Necessary.** Having constructed its yard office a few feet south of the main track and necessarily making up its freight trains north of the main track, and it being necessary for conductors to obtain their orders and waybills from the yard office, the railway company was bound to know these employees must cross the main line in order to reach their trains about to be taken out. This was notice that such employees were likely to, be upon or near the track next to the office.

2. ———: ———: ———: **Running Train Without Warning or Headlight in Night Time.** And in these circumstances, and there being no particular point used or recognized as a crossing, it was negligence to run an overdue passenger train past the yard office, on the main line, on a dark night, through an unlighted yard, at a speed of thirty or thirty-five miles an hour, without sounding the bell or whistle, and without a headlighht burning, particularly when the register in the office indicated the train had already passed, as was observed by the plaintiff freight conductor, who, having received his orders and waybills, had left the office and was proceeding to his freight train along the main line, when suddenly apprehending his danger he leaped, back, struck the office building and "rebounded" against the train.

3. ————: **Headlight.** A headlight is a common and necessary means adopted by all railroads for the protection alike of those rightfully on the train, or on the track, or approaching it, in the night time, and to rapidly run a train through railroad yards in the night time without such headlight is negligence.

4. ————: **Lookout for Employees.** The rule that a railroad company is under no obligation to keep a lookout for employees who are aware of what is going on and are required to guard themselves from injuries naturally to be expected, has no application to an act or movement which is of unusual character and the unusualness of which reasonably may deprive the employee of an opportunity to protect himself.

5. ————: **Contributory: Crossing Track by Shortest Course.** The fact that the freight conductor on his way from the yard office across the main line to take his train, did not cross it directly, was at most evidence of contributory negligence, which is not a bar to an action for damages under the Federal Employers' Liability Act.

6. ————: **Instruction: Should.** The use of the word should, used in an instruction in which the jury are told that, if they find certain facts, they "should" return a verdict for plaintiff, is not objectionable. It imports duty or obligation; and is therefore appropriate to advise the jury of their duty.

7. ————: ————: **Contributory Negligence as Diminution of Damages: In Language of Statute.** In an action brought under the Federal Employers' Liability Act, an instruction telling the jury, if they find certain facts, to return a verdict for plaintiff, "even if if you should find him guilty of negligence contributing to the injury, but in that event the damages should be diminished by you in proportion to the amount of negligence attributable to plaintiff," using the language of the statute, uses a formula that is exempt from criticism. But whether an instruction explaining the statutory language should have been given, is not decided, because none such was asked, and the question is not in the record.

Appeal from Randolph Circuit Court.—*Hon. A. H. Waller,* Judge.

AFFIRMED.

*J. L. Minnis, N. S. Brown* and *D. H. Robertson* for appellant.

(1) The trial court erred in refusing to give defendant's instructions in the nature of demurrers to the evidence, at the close of plaintiff's case and

again at the close of all the evidence, because: (a) there was a total failure to prove the charges of negligence alleged in the petition; (b) there was a failure to prove any duty of the defendant to have the headlight on the engine burning, or to warn the plaintiff by sounding the whistle or ringing the bell; and (c) there was a total failure of proof that the speed of the passenger train was excessive. Kelly ˙v. Benas, 217 Mo. 9; Hufft v. Railroad, 222 Mo. 286; Gabal v. Railroad, 251 Mo. 257; Rashall v. Railroad, 249 Mo. 509; Cahill v. Railroad, 205 Mo. 393; Riccio v. Railroad, 189 Mass. 358; Clancy v. Transit Co., 192 Mo. 615; McGrath v. Transit Co., 197 Mo. 98. (d) It was not negligence *per se* for defendant to run its passenger train without a headlight or to fail to ring the bell or sound the whistle, because such failures were not shown to be in violation of any duty created by statute or ordinance. 8 Thompson (White Supp.), sec. 10. (2) Plaintiff was guilty of contributory negligence and his negligence was the sole cause of his injuries. (3) The court erred in giving plaintiff's instructions numbered one and four. Sec. 3, Federal Employers' Liability Act; Railroad v. Earnest, 229 U. S. 122; Railroad v. Tilghman, 237 U. S. 499; Railroad v. Banks, 156 Ky. 609; Railroad v. Holloway, 163 Ky. 125; Cross v. Railroad, 191 Mo. App. 202.

*M. J. Lilly* and *O. C. Phillips* for respondent.

(1) The testimony showed negligence on the part of defendant. Tetwiler v. Railroad, 242 Mo. 187; Cotner v. Railroad, 220 Mo. 285; Becks v. Mo. Pac. Ry. Co., 102 Mo. 551; Morrow v. Railroad, 147 N. C. 623, 16 L. R. A. (N. S.) 642; Gorton v. Harmon, 152 Mich. 473; 8 Thompson (White Supp.), Negligence, sec. 1548; Railroad v. Masley, 60 Fla. 186. (2) There was no error in the instruction in the measure of damages. Railroad v. Ernest, 229 U. S. 114. Appellant cannot complain of the instructions, having failed to ask one instructing more fully. Bank v. Ragsdale, 171 Mo.

168; Wheeler v. Bowles, 163 Mo. 398; Ferber v. Railroad, 139 Mo. 285; Wahl v. Transit Co., 203 Mo. 276; King v. St. Louis, 250 Mo. 501.

BLAIR, J.—In the Randolph Circuit Court respondent, a freight conductor in appellant's service, recovered judgment for damages for injuries he received when struck by one of appellant's trains in the yards at Moberly. Moberly is a division point. The yard office is a few feet south of the main line; and a double lead on which two or three switch engines were working at the time respondent was injured, is just north of the main line. About midnight respondent was called for duty. He was to take out a freight train composed of cars destined to points outside the State. His train was made up in the yards on a track north and west of the yard office, which office is south of all the tracks. One of appellant's, passenger trains due from the west at 2:50 a. m. was late. Respondent went to the yard office, procured his waybills and orders, and left the office on his way to his train. It was necessary for him and all other freight conductors to cross the main track, after leaving the office, in order to get to trains to which they were assigned. The distance of the yard office from the south rail of the main line is estimated by the witnesses to be from four to six feet. There is evidence tending to show that it was known to be customary for conductors to look over the train register and that respondent did this; that this register indicated that the train which struck respondent was already in; that respondent procured his waybills and orders and went out the east door of the yard office, thence to the north side thereof, and, according to the engineer on the passenger train, was walking westward in the space between the office and the main track when he suddenly discovered appellant's train almost upon him; that he leaped back, struck the building and "rebounded" against the train and was injured. There is also evidence that he had walked, in the space indi-

cated, toward the west end of the yard office, and then stepped out upon the main track and proceeded west a few steps further, and then was struck; that this course in going to his train was more convenient and safer than to go directly across the main track; that there was a space six or eight feet wide between the main line . and the lead track next north of it, and the employees walked along this space in which there was a pathway; there is no evidence this pathway crossed the main line or was generally used by trainmen in going from the yard office to their trains. There was evidence the main track west from the yard office was straight for a half mile or more,   and that an electric headlight, such as was on the engine of the passenger train, could be seen two miles away; that the train which struck respondent was running thirty or thirty-five miles an hour; that it gave no signals, either by bell or whistle, and that the headlight was not burning and that it reached the yard office before those inside were aware of its approach; that the night was dark, and the testimony warrants an inference that no other lights on the train were visible to one as nearly in front of it as was respondent, and that the yard, west of the office, was unlighted. There is no dispute as to respondent's injury nor as to the. train which injured him.

I. Having constructed its yard office next the main track and south of it and necessarily making up its freight trains north of the main track, and it being necessary for conductors to procure their **Negligence Toward Employee.** orders and waybills from the yard office, appellant was bound to know these employees must cross the . main line in order to reach their trains. This was notice that such employees were likely to be upon or near the track near the yard office. There was no evidence any particular point was used or recognized as a crossing. In the circumstances it was negligence to run an overdue passenger train past the yard office on a dark night, through an unlighted yard, at a speed of thirty or

thirty-five miles per hour, without sounding bell or whistle and without a headlight burning, particularly when the train register in the office, as observed by respondent, indicated such train had already passed. A headlight is "a common and necessary means adopted by all railroad companies for the protection alike of those rightfully on the train, and on the track, or approaching it in the night time. No engine is constructed without such a light, and no train is run in the night time by any railroad company under any ordinary circumstances without having it lighted. This is a fact known to all reasonable minds by common experience, and the court commited no error in declaring that it was negligence if defendant's servants failed to have such light lighted and burning at the time of the collision." [Becke v. Ry. Co., 102 Mo. l. c. 552; Gorton v. Harmon, 152 Mich. l. c. 476; Burling v. Railway, 85 Ill. l. c. 20; B. & O. S. W. Ry. v. Alsop, 176 Ill. l. c. 475; Collins v. Railroad, 30 Minn. l. c. 33; Railway v. O'Hara, 150 Ill. l. c. 585; Willis v. Railroad, 122 N. C. l. c. 909; Railroad v. McNicholas, 98 Ill. App. l. c. 58; Artz v. Railroad, 44 Iowa, 284.]

It is contended respondent was an employee and there was no obligation to keep a lookout for him. Gabal v. Railroad, 251 Mo. l. c. 267 et seq., and like cases are relied on. The principle announced in those cases has no application to this. That principle is founded upon the idea that employees falling within it are aware of what is going on and are expected, ordinarily, to guard themselves from injury from the transaction of the company's business in the usual manner. In those cases the ability of the employee to protect himself and the rule that he must do so depend upon the fact that the movement which caused the injury was one naturally to be expected. It is not held in any of those decisions that an act or movement which is of unusual character and the unusualness of which reasonably may be found to have deprived the employee of an opportunity to protect himself, is nevertheless one from which

he must protect himself at his peril. The rule invoked has not been applied to facts like those in this case, and we do not think it applicable. The doctrine is usually carefully limited and qualified and respondent does not fall. within its scope. [Gabal v. Railroad, supra; Colasurdo v. Railroad, 180 Fed. 1. c. 835; Hardwick v. Railroad, 181 Mo. App. 1. c. 166 et seq; Schulz v. Railway, 57 Minn. 1. c. 273.] The fact respondent did not walk directly across the main line does not, of itself, defeat the action. It was evidence, at most, of contributory negligence, which is not a bar in an action under the Federal Employers' Liability Act under which this case was tried.

II. This action is under the Federal Employers' Liability Act. Respondent's first instruction required the jury, if they found certain facts they should return a verdict for respondent; and added: "and *Instruction: Contributory Negligence.* if you so find your verdict should be for the plaintiff, even if you should find him guilty of negligence contributing to the injury, but in that event the damages should be diminished by you in proportion to the amount of negligence attributable to plaintiff."

The language of the act (Sec. 3) is that "contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributed to such employee."

(a) The word "should" as used. in the instruction imports duty, obligation; and, therefore, the objection to its use is not well founded. It is a word used with frequency in instructions to advise the jury that it is their duty as jurors to find as stated. The objection is quite technical and is untenable. [State v. Connor, 74 Kan. 898; People v. Barkas, 255 Ill. 1. c. 526; Lynch v. Bates, 139 Ind. 1. c. 210, 211; Smith v. State, 142 Ind. 1. c. 293; Durand v. Railroad, 65 N. J. L. 1. c. 660, .661.]

(b) The language of the quoted clause, except as pointed out under (a), is the language of the statute.

In Norfolk & Western Ry. v. Earnest, 229 U. S. l. c. 120 et seq., the Supreme Court of the United States considered an instruction, the relevant part of which is: "the Act of Congress . . . . . provides that . . . . contributory negligence is not to defeat a recovery altogether, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee . . . . the negligence of the plaintiff is not a bar to a recovery, but it goes by way of diminution of damages in proportion to his negligence as compared with the negligence of the defendant." The court said: "The thought which the instruction expressed and made plain was that, if the plaintiff had contributed to his injury by his own negligence, the diminution in the damages should be in proportion to the amount of his negligence. This was twice said, each time in terms readily understood. But for the use in the second instance of the additional words 'as compared with the negligence of the defendant' there would be no room for criticism." The objectionable language is not found in respondent's instruction in this case. In that case the court held that "the statutory direction that the diminution shall be 'in proportion to the amount of negligence attributable to such employee' means, and can only mean, that, where the casual negligence is partly attributable to him and partly to the carrier, he shall not recover full damages, but only a proportional amount bearing the same relation to the full amount as the negligence attributable to the carrier bears to the entire negligence attributable to both." The instruction in this case follows the act, and the decision cited holds such a formula to be exempt from criticism. Whether an instruction explaining the statutory language, in accordance with the holding in the Earnest case, ought to have been given had appellant asked it, is not a question the record presents.

We find no reversible error. The judgment is affirmed. All concur, *Bond, P. J.,* in paragraph one and in result.