WILLIAM EVANS, Appellee, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, a Corporation, Appellant.—131 S. W. (2d) 604.

Division One, September 14, 1939.*

*NOTE: Opinion filed at May Term, 1939, July 7, 1939; motion for rehearing filed; motion overruled at September Term, September 14, 1939.

148

*Cyrus Crane, Geo. J. Mersereau, John N. Monteith, James F. Walsh* and *Dean Wood* for appellant.

150

*Trusty, Pugh & Trusty* and *Guy W. Green, Jr.,* for respondent.

CLARK, J.—Defendant appeals from a verdict and judgment in favor of plaintiff in the sum of $9800, for personal injuries alleged

to have been caused by defendant's negligence. The case is governed by the Federal Employers' Liability Act.

Appellant contends that the trial court erred in refusing to give defendant's demurrer offered at the close of all the evidence, for the following reasons: that plaintiff received his injuries at a place on defendant's railway where defendant had a right to expect a clear track; that the proof was insufficient to establish a custom or practice of defendant to warn plaintiff and others; that, in fact, plaintiff did receive sufficient warning; and that, under the evidence, plaintiff assumed the risk.

Briefly, the evidence shows: that plaintiff was injured on August 29, 1933, on defendant's main line tracks a short distance west of the little village of Morris, Kansas. He had been employed by defendant since May 1, 1933, in a gang of men replacing steel rails in defendant's tracks. This gang comprised about eighty men and, for three weeks prior to August 29th, they were quartered in bunk cars, on a passing track near a public road about one-half mile west of the Morris station, some of the cars being east and some west of the road. The public road runs north and south and the railroad east and west. Another public road crosses the railroad just east of the station. Whistling posts were located along the tracks for each of said crossings and for the station and trains were required to, and generally did, whistle for each of said crossings and for the station. There were two main line tracks over which forty or fifty trains passed daily. The tracks were about level and straight for more than one-half mile west of the place where plaintiff was injured. The steel gang had finished its work and the men had been instructed to go to the station and get their pay checks and transportation home. Plaintiff was injured about three P. M., but his time on the pay roll was not up until four P. M. The day was clear. He was walking east from his bunk car to the station on a path at the north edge of the ties on one of the main tracks when struck by an extra freight train coming from the west at a point about 350 feet west of the station. He was carrying a large roll of bedding on his left shoulder and had a suit case in his right hand. The path had been used for several years by persons living in the vicinity. The neighborhood is not thickly settled and Morris is a small place, with a pool hall, refreshment stand and a few stores. About half of the eighty men on the steel gang walked from the bunk cars to the station and back daily and about ninety per cent of those who did so used this path. Other portions of the testimony will be discussed later.

Appellant cites a number of decisions by this and other courts holding that a railroad, in the absence of a practice or custom to do so, is under no duty to warn track workers of approaching trains. As to whether such custom or practice had been established by the defendant, the evidence is in direct conflict.

On this point the plaintiff testified as follows:

"Q. Now, while the men were traveling along those tracks in front of the bunk cars and from there to the station, and from the station back along that track, or in that path, was there or not any practice or custom of the engines to give any warning of their approach? A. Yes, sir.

"Q. (by Mr. Trusty) What would they do when they were running along there and men walking to and from? A. They whistled, blew the whistle and rung the bell."

Similar testimony was given by witnesses Fiedler and Gibson. As stated, this evidence was contradicted by defendant's witnesses, but we think it was sufficient to take the question to the jury. [Brock v. Ry., 330 Mo. 918, l. c. 926, 51 S. W. (2d) 100; Koonse v. Ry., 322 Mo. 813, 18 S. W. (2d) 467, l. c. 471; Mitchell v. Ry., 334 Mo. 926, 69 S. W. (2d) 286, 291.] We have examined the cases cited by appellant and they concede that where there is substantial evidence the question is for the jury.

The question of a custom or practice to warn seems to be a moot one in this case, because appellant contends that it *actually did warn the plaintiff* and the engineer and fireman testified that they saw him on or near the track when 1000 to 1500 feet away and realized that he was not going to get out of the way when they were a distance of 150 to 200 feet from him. Whether or not a practice or custom was proved, defendant owed plaintiff the duty to warn him after the operators of defendant's train saw plaintiff in peril and *realized that he was oblivious to his peril*. [Hinzeman v. Railroad, 182 Mo. 611, 81 S. W. 1134; Hinzeman v. Railroad, 199 Mo. 56, 94 S. W. 973; Hardwick v. Railroad, 181 Mo. App. 156, l. c. 167, 168 S. W. 328.] "It has been frequently held by the Supreme Court of this State in cases where those in charge of the engine saw an employee on or near the track, and saw that he was in peril and that he was oblivious to his danger, in time to warn him it was their duty to do so."

Appellant cites cases which hold that a railroad, absent a practice or custom, does not owe the *same* duty to discover the peril and give warning to track workers as it owes to other employees, but none of those cases hold that the railroad is absolved from *all* duty to warn after the peril is discovered and appreciated. Typical of such cases is Degonia v. Railroad, 224 Mo. 564, 123 S. W. 807. Reference to the closing paragraph of that opinion will show that a majority of this court refused to depart from the doctrine announced in the Hinzeman and other cases. Also at page 592 of that opinion it is said: "But leaving off the details on this point, when plaintiff failed to both plead and prove a public user of such tracks, the doctrine of a clear track follows and defendant under such circumstances cannot be held liable unless it be shown that its servants in control of the engine *actually saw the deceased in a position of peril, of which po-*

*sition he was oblivious,* in time to have averted the injury by the exercise of ordinary care.'' (Italics ours.)

Appellant contends that the evidence shows that its employees in charge of the train did give sufficient warning to plaintiff. The evidence on this point conflicts. Williams, the engineer, testified that he sounded the whistle for the crossing west of Morris; that the fireman warned him of plaintiff's position on the track when plaintiff was about 1000 feet ahead; whereupon, he immediately began to sound short blasts of the whistle as a warning and continued to do so until the train approached within about 200 feet of plaintiff at which point he could no longer see plaintiff from his side of the engine; that he then made up his mind that plaintiff was not going to get off the track and he ceased to sound the engine whistle and set the air brakes in an effort to stop the train. Megenat, the fireman, corroborated this testimony and also testified that the engine bell was ringing. Other witnesses for defendant, Melvin Jones, Hoke, Barnhart, testified that they heard the short blasts of the whistle and Francis Jones and Chriss said they heard the whistle for the west crossing. The plaintiff testified that no warning signal was given. For the plaintiff, Gibson testified that he saw the train pass; that he was on the north side of the track (same side that plaintiff was on) and about 300 feet from where plaintiff was injured; that no warning signals and no signals for either crossing or the station were given; this witness did not see plaintiff get hurt and did not learn of it until some time after; that while the train was passing there was some comment by some of the men about the train not whistling. Witness Maberry was at the bunk cars when the train passed; he said he heard it whistle around the curve (which was some distance west of the west crossing) and said he was sure it did not whistle again; he said he did not hear the engine bell. Witness Androes was at the bunk cars; he testified positively that no crossing or warning whistles were sounded and that he did not hear the engine bell. Witness Doty's testimony was similar to that of Androes. Witness West was at the bunk car and heard no signal either by bell or whistle.

Appellant says that all the *positive* evidence is to the effect that the signals were given and that this controls, citing Little v. Ry. (Mo. App.), 123 S. W. (2d) 220, l. c. 222, and Martin v. Ry., 325 Mo. 1107, l. c. 1117, 1118, 30 S. W. (2d) 739. In the Little case the plaintiff did not testify that the bell was *not* sounded. He said he didn't hear it and later qualified this by saying he did not remember hearing it. In the Martin case two witnesses testified that they did not hear the bell, but both said there was at the time considerable noise from other trains.

We think the testimony, on failure to warn, in the instant case is much more positive than in either the Little case or the Martin case. In Koonse v. Ry., 322 Mo. 813, 18 S. W. (2d) 467, l. c. 471, we held

that the testimony of one witness, that he did not hear the bell, was sufficient to take that issue to the jury, although several witnesses testified that the bell was ringing.

In the instant case several witnesses testified that no signals were given and one witness, Gibson, testified that this was commented on at the time. Another witness, Chriss, actually saw the train strike plaintiff. Chriss was a witness for defendant. He said he heard a whistle for the west crossing, but heard no other whistle. They were all close enough to hear and the evidence did not show that there was any other noise to prevent them from hearing.

Plaintiff's evidence concerning the bell was not so positive as it was concerning the whistle, but this confronts us with the question as to whether the ringing of the bell would be a sufficient warning under the circumstances. In one of the Hinzeman cases, 199 Mo. 56, we held that the fact that the engine bell was rung for a long distance before deceased was struck, would not excuse defendant's failure to warn by an alarm whistle a man on the track apparently oblivious to danger; that under such circumstances the ringing of the bell alone was not ordinary care. To the same effect are Engel v. Ry. (Neb.), 195 N. W. 523, and Simmons v. Ry. (La.), 90 So. 24. Nor would the crossing whistle constitute a sufficient warning. [Hinzeman v. Ry., supra.]

We have carefully considered the evidence and believe it is sufficient to take to the jury the issue of sufficient warning. As a reviewing court, we cannot pass upon the weight of the evidence.

■ On the question of assumption of risk under the Federal Act the rule is: "The employee assumes the ordinary risks of his employment, and, when obvious or fully known and appreciated by him, the extraordinary risks and those due to negligence of his employer and fellow employees." [Jenkins v. Ry., 335 Mo. 748, 73 S. W. (2d) 1002, l. c. 1007; Boldt v. Ry., 245 U. S. 441; C. & O. Ry. Co. v. Proffit, 241 U. S. 462, 36 Sup. Ct. 620; C. & O. Ry. v. Nixon, 271 U. S. 218, 46 Sup. Ct. 495.]

Plaintiff testified that when he first came to the path at the north edge of the track he looked both ways for trains and saw none. Without again looking to the west, he walked east along the track for a distance variously estimated at from 300 to 450 feet when he was struck by a train coming from behind him. Undoubtedly plaintiff was guilty of contributory negligence, but that is not available as a defense under the Federal Act nor is it claimed as a defense in this case.

The question is: Did plaintiff assume the risk of being injured? The distinction between "contributory negligence" and "assumption of risk" is not always made clear by the decisions. For a discussion of the question, see: Jenkins v. Ry., 335 Mo. 748, 73 S. W. (2d) 1002; Clark v. Ry. (Mo.), 111 S. W. (2d) 168; O'Donnell v. Ry.,

324 Mo. 1097, 26 S. W. (2d) 929; Kippenbrock v. Ry., 270 Mo. 479, 194 S. W. 50; Brock v. Ry., 330 Mo. 918, 51 S. W. (2d) 100; Martin v. Ry., 325 Mo. 1107, 30 S. W. (2d) 705; Davis v. Ry., 276 Fed. 187; Seaboard A. L. Ry. v. Horton, 233 U. S. 492, 34 Sup. Ct. 635, 58 L. Ed. 1062; 39 C. J., sec. 883, p. 689.

Plaintiff furnished substantial evidence that defendant had established a custom and practice to warn trackmen and others of approaching trains; also that no sufficient warning was given plaintiff. All this was disputed by defendant's witnesses. On consideration of defendant's demurrer to the evidence, we are bound to regard the testimony in a light most favorable to plaintiff. On plaintiff's theory he was struck from behind without warning, in violation of defendant's established practice and custom to warn. If that be true, plaintiff had the right to rely upon the giving of the customary warning signals and we cannot say as a matter of law he assumed the risk of being struck without warning.

In Brock v. Railroad Co., 330 Mo. 918, at page 939, we said:

"As to assumption of risk. The evidence tending to show the trainmen to have been guilty of negligence as to deceased in not sounding the signals required by custom whereby a sudden and unexcepted danger was created, is such that we cannot declare, upon the facts and as a matter of law, that he assumed the risk arising therefrom. Assumption of risk does not include risks 'arising from the noncustomary, unknown and not to be anticipated negligence of a fellow servant.' [Montgomery v. Baltimore & O. R. Co. (6 C. C. A.), 22 Fed. (2d) 359; Chesapeake Co. v. Proffit, 241 U. S. 462, 36 Sup. Ct. 620, 60 L. Ed. 1102; Chicago Railroad Co. v. Ward, 252 U. S. 18, 40 Sup. Ct. 275, 64 L. Ed. 430.] The deceased had a right to depend on the giving of the customary signals and did not 'assume the risk of injury if, and in so far as, it' grew out of the negligent failure to sound such warnings 'unless the hazard from that source was obvious or fully known and appreciated by him. [O'Donnell v. Baltimore & O. Railroad Co., 324 Mo. 1097, 1107, 26 S. W. (2d) 929, 933, and cases there cited.]''

In O'Donnell v. Ry., 324 Mo. 1097, 26 S. W. (2d) 929, at page 934, we said:

"There is substantial evidence, direct or inferential, of the existence of the rule and custom, that the deceased knew of it, that he had a right to and did rely on it, and that he was engaged within the scope of his duties when he was struck and killed. Indeed, the appellant's evidence is confirmatory of the respondent's contentions on these issues. With this preliminary showing it cannot be said as a matter of law that the deceased assumed the risk of injury from a negligent violation of the custom unless it conclusively appears the danger of and from such breach was obvious or fully understood by him, and the burden was on the appellant to establish the fact. [Dir. Gen. of

Railroads v. Templin, supra, 269 Fed. l. c. 485; Oglesby v. St. L.-S. F. Ry. Co., 318 Mo. 79, 93, 1 S. W. (2d) 172, 178.]''

[See, also, Kippenbrock v. Ry., 270 Mo. 479, 194 S. W. 50; Clark v. Ry. (Mo.), 111 S. W. (2d) 168; Koonse v. Ry., 322 Mo. 813, 18 S. W. (2d) 467; Engel v. Ry. (Neb.), 195 N. W. 523; McGovern v. Ry., 235 U. S. 389, 35 Sup. Ct. 127.]

Appellant cites C. & O. Ry. Co. v. Nixon, 271 U. S. 218, 46 Sup. Ct. 495; Carfelo v. Ry., 54 Fed. (2d) 475; Jacobson v. Ry., 66 Fed. (2d) 688; Jones v. Ry., 325 Mo. 1153, 30 S. W. (2d) 481; Davis v. Ry., 276 Fed. 187. In C. & O. Ry. v. Nixon, it was held that a section foreman, who was overtaken and killed by a train, assumed the risk. No custom or practice to warn was pleaded or proved. The same is true of the Carfelo case, supra (see 54 Fed. (2d) l. c. 477); also of the Jacobson case, supra (see 66 Fed. (2d) l. c. 691). The latter case indicates that a different ruling would have been made had the proof shown that the enginemen saw the plaintiff in a position of danger. In the Jones case, supra, we held that the employee assumed the risk, but we recognized the exception where a custom to warn has been established. At page 1159, we said:

"The general Federal rule is that a railroad company rests under no duty to employees working in its yards to sound bell or whistle on switch engines moving thereabout. An employee takes upon himself the hazard involved in going on or near tracks where he knows cars are likely to be shunted without warning. But an exception to the rule is allowed when the switching movement was covered by a rule or custom to give warning signals for the protection of employees of the class involved and the employee was working in the line of his duty. [O'Donnell v. B. & O. Railroad Co., 324 Mo. 1097, 1107, 26 S. W. (2d) 929, 933; Martin v. Wabash Ry. Co., ante, page 1107, 30 S. W. (2d) 735.]

"So in this case if the respondent had pleaded and proved a custom observed for the benefit of switchmen to give warning signals by bell or whistle when cars were shunted, she would perhaps have been entitled to recover so far as that one fact is concerned."

In the Davis case, supra, there was no proof of a custom to warn nor any proof that the enginemen saw the trackworker who was killed.

We hold that the trial court did not err in refusing to give defendant's demurrer to the evidence.

■ Appellant contends that the court erred in giving, at plaintiff's request, Instruction No. 2 on assumption of risk. This instruction told the jury, in substance, that, if they found the facts as outlined in plaintiff's Instruction No. 1, that plaintiff would not assume the risk of being run into and struck by the locomotive unless he actually knew of the approach of said train, or unless they found from the evidence that the danger of being struck or injured by an engine

coming east was so open and so obvious that no ordinarily careful and prudent person would have used the pathway to go to the station.

Defendant says that this instruction leaves out the essential element as to the plaintiff assuming such risk, not merely from using the path, but principally from his failure to keep a proper lookout for his safety in using the path; citing Bernola v. Ry., 68 Fed. (2d) 172; Karr v. Ry., 341 Mo. 536, 108 S. W. (2d) 44; Norfolk & Western Ry. v. Gesswine, 144 Fed. 56; C. & O. Ry. v. Nixon, 271 U. S. 218, 46 Sup. Ct. 495; Witham v. Delano, 184 Mo. App. 677, 171 S. W. 990; Delfosse v. Ry. (Mo.), 201 S. W. 860.

The Bernola case, supra, held that a section foreman assumed the risk of being hit by a train under the evidence, but there was no showing of a custom to warn trackworkers of approaching trains at the place of injury. In the Karr case, supra, the plaintiff was employed by the railroad as a flagman at a street crossing. He was injured when a train collided with and threw an automobile against him. We held that a violation of duty to travelers on a street at a grade crossing would not afford a cause of action to the flagman because it was not a duty owed to him. In Norfolk & Western Ry. v. Gesswine, supra, it was held that crossing whistles are for the benefit of persons using or about to use the crossing and a failure to sound such whistles is not a violation of a duty to an employee repairing the track. We have already briefly stated the nature of the case of C. & O. Ry. v. Nixon, supra. In Witham v. Delano, supra, a track laborer was injured by being struck on the elbow by a passing train while he was walking beside the track. The evidence failed to show that the engineer actually saw him in obvious peril in time to prevent the injury by giving a signal. We held there was no liability and said: "seeing him walking along between the tracks in a manner that carried no suggestion that he was in peril because of his own lack of proper attention, the engineer was not required to anticipate that he might thoughtlessly protrude his elbow an inch or two into the path of the train." In the Delfosse case, supra, the injury was to a passenger; so there was no question of assumption of risk involved. However, we held as reversible error the giving of an instruction which directed a verdict for plaintiff but omitted certain essential elements necessary to recovery; and further that such instruction could not be cured by other instructions. In none of these cases, except the Delfosse case, was there any substantial proof of a duty owed by the defendant *to the plaintiff*. Of course, absent a violation of duty there is no negligence, but, as already stated, under the plaintiff's theory in the instant case defendant owed him the duty to give timely warning in accordance with its custom and failed to do so. These were questions for the jury and, if found, constituted negligence the risk of which plaintiff did not assume unless "obvious or fully known and appreciated by him."

Instruction lettered "FF," given at request of defendant, told the jury "that if you find and believe from the evidence that there was a risk of injury to William Evans in walking along said path . . . and said risk in so doing was obvious to said William Evans or was fully known or appreciated by him, then you are instructed that said William Evans assumed said risk and he cannot recover. . . .:" This is the exact issue submitted by plaintiff's instruction number two. Other instructions given at defendant's request told the jury that it was the duty of plaintiff to look out for his own safety and defendant's employees had a right to assume he would do so until they actually saw him in imminent peril and oblivious thereto. Also that if plaintiff was injured solely by reason of his failure to exercise ordinary care, he could not recover.

In the Delfosse case, supra, the omission in plaintiff's instruction concerned matters essential to plaintiff's recovery. Such omission is not cured by other instructions. As to defensive matter, an omission in plaintiff's instructions may be cured by defendant's instructions. [O'Donnell v. Ry., 324 Mo. 1097, 26 S. W. (2d) 929; Clark v. Ry. (Mo.), 111 S. W. (2d) 168; Harrison v. Ry., 339 Mo. 821, 99 S. W. (2d) 841; Mitchell v. Ry., 334 Mo. 926, 69 S. W. (2d) 286.]

If there was any serious omission from plaintiff's Instruction number two, which we do not hold, it seems to have been cured by defendant's instructions. At least, defendant submitted the issue in the same form that plaintiff did and is not in a position to complain. Reading all the instructions together, we find no error in them.

If defendant's enginemen saw plaintiff in peril and oblivious, it seems strange that they would fail to warn him. If they did warn him, it seems strange that he would not have taken the one step that meant safety. Those questions are not for us. They were properly submitted to the jury on substantial, if conflicting, testimony and we are bound by the verdict.

The judgment is affirmed. All concur, except *Hays, P. J.,* absent.