Fernia Koonse, Administratrix of Estate of Melbourne M. Koonse, v. Missouri Pacific Railroad Company, Appellant.—18 S. W. (2d) 467.

Division Two, April 5, 1929.

814

*Edward J. White, Thomas J. Cole* and *Merritt U. Hayden* for appellant.

*Charles P. Noell* and *Hensley, Allen & Marsalek* for respondent.

820

[black redaction bar]

DAVIS, C.—This is an action, based on the Federal Employers' Liability Act, to recover damages for the death of plaintiff's intestate. The jury returned a verdict for $35,000, but, to forestall the sustention of the motion for a new trial, plaintiff, on order of court, remitted the sum of $10,000, whereupon the motion for a new trial was overruled and judgment was entered for $25,000. Defendant appealed.

The facts submitted in behalf of plaintiff warrant the finding that, at the time of his death, plaintiff's husband and intestate, thirty-five years of age, was employed by defendant railroad as a conductor in charge of a work train. The deceased, the engineer, the fireman and two brakemen comprised the train crew. The casualty occurred about five-twenty P. M. on Saturday, October 4, 1924, between Knox and Sulphur avenues, at a point on defendant's railroad, in the city of St. Louis.

The train and crew left defendant's yards, in the city of St. Louis, about eight A. M. that morning, and proceeded and carried laborers to a place between the towns of Webster Groves and Kirkwood, a distance of eight or ten miles to the west, for the purpose of digging ditches along the right-of-way to divert water from the tracks. It was admitted that these men were engaged in working on and repairing the main-line track over which trains, both passenger and freight, were operated in interstate commerce. The train was composed of an engine, two coal cars, a box car and a caboose. Earth from the ditches was piled in the coal cars. Upon finishing the day's work, the train, with the trainmen and laborers aboard, returned to St. Louis. On this journey east the engine was headed west, and was backing in, pushing the caboose and the box car, and pulling the two coal cars, loaded with earth. The caboose was leading. At the place where deceased met his death, the defendant maintained both east-and-west-bound main-line tracks, and the train in question came in over the eastbound tracks, which lie south of the westbound tracks. Knox Avenue lies west of Sulphur Avenue. The train stopped on the eastbound track three or four feet west of block signal. Thereupon deceased, by means of steps thereon, stepped to the ground from the north side of the east end of the caboose, and walked eastwardly

down the eastbound tracks in front of the caboose, putting on gloves as he walked, when the train, without a signal or warning of any kind and without whistling or ringing the bell, started in motion and moved, so that deceased, who had taken twelve to fifteen steps down the eastbound track, was hit, knocked down and run over by the caboose and fatally injured. The facts as to the casualty were related by one Creason, a witness for plaintiff, who stated that, while waiting for a street car, he saw the train come from the west and the caboose stop three or four feet west of the block signal for a few seconds, whereupon deceased alighted from the north and east side of the caboose, and, while walking eastwardly down the tracks, was hit by the train as it started and moved. He did not hear a whistle or bell or signal of any kind, nor did he see deceased give a signal of any kind; nor did he observe what the block signal showed. Two sidetracks, known as "World's Fair tracks," lie to the north of the westbound or north tracks, opposite the place deceased was killed. Witness stated that he saw no one on the rear of the caboose except deceased. Witness also stated that he had an argument with a police officer, who came up, relative to moving the train to release deceased.

Witness Wade testified that he saw Creason run to the scene, holloing, "Stop, you are killing a man." Witness did not see the occurrence, and stated he did not hear a bell ring. Defendant admitted that the front trucks had blood on them.

The fireman on the work train, plaintiff's witness, stated that he did not know whether Signal 54, as they approached it, was against them or open. He said the bell was ringing prior to the casualty; that it was automatic and it was generally done. They start the bell and let it ring because of the many crossings. It had been the custom for many years to ring the bell when the train or engine is started. Sometimes the train will start before the bell is rung, if the fireman is not attentive to business, and sometimes it rings before the engine starts; however, it is all done about the same time. When the train is stationary, witness considered it the custom to give two short blasts of the whistle before starting the engine, to notify the crew. He further testified that the coal cars, containing earth, were to be set on sidetracks whenever they found a place to set them, and they were looking for such a place. They were finally set out on a sidetrack near Howard's Station, south of the eastbound main track. Howard's Station was about a half mile east of where the deceased was killed. The deceased, as conductor in charge of the train, had authority to determine the tracks on which the cars were to be set out and left. The first knowledge witness had of the accident was when the engineer said they had killed a brakeman.

A freight conductor stated that, when a train stopped at Signal No. 54, it was the duty of the engineer to whistle out and flag, wait

a minute, call in the flag and proceed, and that in whistling out two short blasts of the whistle are given.

A rule of defendant reads: "The engine bell must be rung when engine is about to move and while approaching and passing public crossings at grade."

In a deposition the engineer testified that he did not think he stopped on the occasion in question before reaching block Signal No. 54, and when asked by defendant's counsel to be positive, he said, "I never stopped."

Defendant's evidence tends to show that a brakeman was standing on the platform at the east end of the caboose in charge of the air and whistle, sounding warnings of crossings, and that deceased was at the north end of the same platform and stood in that position until the train was approaching the place where he was killed. That deceased then went into the caboose for his gloves and returned to the platform. As the train approached a crossing in that vicinity, deceased apparently stepped down on the steps of the caboose, but the brakeman failed to see his movements clearly. He did not know whether he stepped or fell down, but he went down the steps of the caboose and disappeared from view. The timekeeper, who was then on the platform, halloed to apply the air, and he did so and stopped the train. He stated that he knew the coal cars were to be set out.

The engineer of the train testified that he first knew of the accident when he saw the trucks of the box car ahead of the engine strike deceased. The train did not stop at any time after passing Knox Avenue until the injury of deceased. It did not stop at the block signal. He did not see deceased off the caboose, walking east. On cross-examination, he said that they had been in the habit of setting out dirt cars at the World's Fair track, or Howard's Station. The conductor determined where the cars to be set out are going to be put. The accident occurred thirty or forty feet east of the block signal. That is where deceased was picked up. His body was found under the second car back of the engine. He further testified that, in backing up, you are supposed to get a signal from somebody at the back end of the train. He stated that before moving a stationary train, the bell had to be rung. It warned anybody that happened to be around the train. The rule had been operative for nineteen years during the time that he had been working. It had always been the practice and rule. All the evidence tended to show that two short blasts of the whistle were not given when the engine moved after the train stopped, and that it was the practice to give them. Other pertinent facts will be found in the opinion.

I. It is charged that the trial court erred in permitting plaintiff in rebuttal to introduce in evidence Rule 30, which provides that the

engine bell must be rung when engine is about to move. In the orderly course of procedure, the evidence was not properly rebuttal, but was admissible in chief; but, as the order of proof was largely within the discretion of the trial court, we refuse to interfere, except upon a clear abuse of discretion, which does not here appear. [Ternetz v. St. Louis Lime & Cement Co., 252 S. W. 65.]

II. Error is founded on the predicate that the evidence fails to develop a submissible case. Various concepts are assigned by defendant to support its position. Defendant does not seem to controvert but rather accepts the trial theory of plaintiff that the action was properly within the purview of the Federal Employers' Liability Act. Be that as it may, we think the proof clearly brings it within the act, for both deceased and defendant were, at the time of his death, engaged in interstate commerce.

By the Employers' Liability Act the Federal government has taken charge of employers' liability to employees in interstate transportion by rail and, as Congress has legislated, the act supersedes state laws on the subject. The principles of the common law as interpreted by the Federal courts are applied to the act, and their rules as to the kind and *quantum* of evidence necessary to show negligence essential to a recovery are paramount. [Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan, 271 U. S. 472.] The United States Supreme Court has ruled that a scintilla of evidence in support of negligence is insufficient upon which to base a recovery (Commissioners of Marion County v. Clark, 94 U. S. 278), but we gather from a reading of the decisions that a scintilla of evidence signifies merely speculation and conjecture. [Patton v. Railway, 179 U. S. 658.] Consequently, plaintiff cannot recover if the proof develops nothing further of negligence than inferences tantamount to speculation and conjecture.

(a) Defendant declares that the evidence for plaintiff that the train stopped and that deceased alighted therefrom and walked down **the track** was insufficient in probative force to become the basis of a verdict for plaintiff. Inasmuch as this proof was contradicted by every other witness in the case, the evidence is interpreted as failing to develop more than a scintilla of proof. The distinction between substantive and scintilla proof is well treated in Hardy-Burlingham Co. v. Baker, 10 Fed. (2d) 277. The case interprets scintilla evidence as inferences from facts tantamount to speculation and conjecture. One phase of substantive evidence may be said to be direct evidence of the existence of a fact. Here there was substantive or direct evidence that the

train was seen to stop; that deceased was seen to alight therefrom and walk rapidly down the track; and that the train moved without ringing the bell or giving other signal, and hit and injured him. This was substantive evidence of certain facts, and, no matter how many witnesses testified in contradiction of them, in the last analysis a jury question developed. In Hardy-Burlingham Co. v. Baker, supra, l. c. 279, the court say: "It may well be that upon this printed record the weight of the evidence on each of these questions is very strongly against plaintiff; upon that we intend to express no opinion, because that is a jury question." However, whether the evidence is strongly against plaintiff, we need not decide, but the engineer and fireman, at first, were not certain that the train did not stop and the brakeman in charge of the air, as shown by his statement, was under the impression that deceased alighted to throw a switch to set out the two cars of dirt.

(b) Defendant denies that the evidence establishes that deceased, in alighting from the caboose and proceeding along the eastbound tracks in front of it, was in the performance of any duty pertaining to his employment. It is argued that plaintiff hypothesized her cause on an assumption of fact that deceased alighted from the train to throw a switch, and that this assumption was mere speculation and conjecture. We agree that, if deceased was not then in discharge of a duty, then he was not entitled to protection, except that defendant and its employees owed him the duty to avoid injuring him after discovering his peril. [Philadelphia & R. Ry. Co. v. Bartsch, 9 Fed. (2d) 858.]

As the jury necessarily found, upon substantial evidence, that the train stopped; that deceased alighted from it and walked rapidly down the eastbound track; that the train after stopping a few seconds, without ringing the bell, moved, struck deceased and injured him, we are precluded by its findings in that regard. However, the evidence further warrants the finding that the deceased was the conductor of the train and in charge of it and that it was his duty to determine on what sidetrack the two cars were to be set out. Immediately north of the place where deceased was injured, there lay a sidetrack, known as "World's Fair track." Howard's Station lay a half mile east. Defendant's witness, the engineer, testified: "We had been in the habit of setting cars out either at the World's Fair track or Howard's Station." We judge from the plat in evidence that it is approximately one hundred feet from block Signal No. 54 to the east end of the World's Fair track. The engineer said that the casualty occurred at the east end of the World's Fair track, maybe thirty or forty feet east of the block signal. Creason's evidence, we think, places the casualty at approximately the same spot.

When deceased alighted from the caboose and walked down the tracks, he was on defendant's property, and it is evident he had a purpose in mind and that that purpose involved the business of defendant. We think such purpose may be inferred from the facts in evidence. We are unable to conjecture that his purpose was connected with his own business or whim. The train was going home, so to speak, save that two cars were to be set out on a sidetrack. They had reached a sidetrack where cars of dirt had theretofore been placed. The sidetrack was approximately one hundred feet east of the place of accident. The World's Fair track was embraced within the designation ''Howard's Station.'' Both plaintiff's and defendant's evidence tend to show that it was the purpose to sidetrack the cars in Howard's Station neighborhood. Under these circumstances we think the jury fairly could draw the inference that he alighted from the train to throw a switch. But even if the evidence did not permit the inference, it was a fair inference from the evidence that he alighted from the train and walked rapidly down the track in the performance of some duty pertaining to his employment, probably for the purpose of reconnoitering. In submitting to the jury the question of throwing the switch, plaintiff shouldered a greater burden than she was required to bear. There is not only a lack of evidence that deceased was outside the scope of his employment, but it is a justifiable inference from the evidence and the circumstances that he was within the scope of his employment in interstate commerce at the time mentioned. [Westover v. Railroad, 6 S. W. (2d) 843; North Carolina R. Co. v. Zachary, 232 U. S. 248; Erie R. Co. v. Winfield, 244 U. S. 170.]

(c) Defendant further denies that the evidence tended to establish a custom to ring, upon stopping, the engine bell before again moving the engine. We think there was evidence of such a custom, not only from plaintiff's, but also from defendant's witnesses. The engineer stated that ringing the bell would be a warning to anybody that may happen to be around the train there somewheres, and that had been the rule and custom for nineteen years that he had been working. The fireman testified that it had been the custom for many years to ring the engine bell before moving it from a stationary position. Moreover, a rule of the defendant required it. We adopt the statement found in St. Louis & S. F. Ry. Co. v. Jeffries, 276 Fed. 73, 1. c. 75, reading: ''We are of the further opinion that it was not incumbent upon plaintiff to show such a custom as would make it a rule of the common law. A servant has the right to rely on signals and warnings customarily given in the conduct of the business in which he is engaged, and if the master fails to give these, he is negligent.'' It may also be presumed that deceased knew of the custom and relied on it. [Director-General v. Templin, 268 Fed. 483; DeClue v. Railroad, 264 S. W.

992.] There is no doubt but that the failure to warn deceased of the movement of the train, by failing to ring the bell, was the proximate cause of his injuries. [Pacheco v. Railroad, 15 Fed. (2d) 467; Montgomery v. Railroad, 22 Fed. (2d) 359; Halt v. Railroad, 279 S. W. 148.]

(d) Defendant denies that there was a failure on the part of its employees to observe the rule and custom of ringing the bell prior to or at the time of starting the engine. It is true that the fireman, plaintiff's witness, and defendant's witnesses testified that the bell was ringing and that it had been automatically ringing for some distance. Opposed to this was the testimony of Creason that he was waiting on Manchester Avenue to board a street car, and that, while standing about fifty feet from the place of injury and five or six feet above the defendant's tracks, he watched the work train that killed deceased approach and come to a stop, and, without ringing the bell or giving a signal, move and strike deceased. Creason was not only in a position to hear the bell, but his attention was directed to the train, to the stopping of it, to the deceased alighting and walking rapidly down the tracks, and to the train moving and striking deceased; consequently, that he did not hear a bell rung was substantial evidence, under the circumstances, that it did not ring before the engine moved the train. Notwithstanding the fact that the fireman and defendant's witnesses testified that the bell was ringing, the evidence rendered the controverted question a matter for the finding of the jury.

III. Defendant maintains that, under the doctrine in Aerkfetz v. Humphreys, 145 U. S. 418, and Toledo, St. L. & W. Ry. Co. v. Allen, 48 Sup. Ct. Rep. 215, variously denominated as the "sectionmen," "trackmen," or "switchmen" rule, the deceased was not entitled to warning, but that it was his duty to protect himself, subject, however, to the exception that it was the duty of the trainmen to warn after discovering the peril. We agree that the foregoing doctrine is in force and must be applied to similar facts, but we think the evidence develops a different state of facts. It was a rule of defendant, as well as its custom and practice in railroading, to ring the engine bell when an engine is about to move. And various Federal courts of appeals have established an exception to the doctrine formulated by the foregoing cases, by ruling that the failure to observe a rule or practice established by a railroad for the protection of its employees is negligence, and that the employee, entitled to protection by the rule or practice, does not assume the extraordinary risks and those due to the negligence of his

employer and fellow-employees, unless the risk was obvious and fully known and appreciated. [Pacheco v. Railroad, 15 Fed. (2d) 467; Lehigh Valley Railroad Co. v. Doktor, 290 Fed. 760; Director-General v. Templin, 268 Fed. 483; Montgomery v. Railroad, 22 Fed. (2d) 359; McGovern v. Railroad, 235 U. S. 389.] The evidence tends to show that defendant herein had established a rule or custom and practice to ring the engine bell when an engine is about to move for the protection of employees about the train, and, as the evidence further tends to show that the trainmen failed to ring the bell on the occasion in question, defendant was negligent. Moreover, the failure of the trainmen to observe the rule was not an ordinary risk of the employment, but it was negligence and thus an extraordinary risk, which the evidence fails to show was obvious or known and appreciated by deceased. The rule or practice violated inured to the benefit of deceased, for it was formulated for his protection as well as others. This ruling thus disposes of the question of assumption of the risk by deceased, as well as his own negligence. The cases of Great Northern Ry. Co. v. Wiles, 240 U. S. 444, Frese v. Railroad, 263 U. S. 1, and Davis v. Kennedy, 266 U. S. 147, are not in point, for the proof does not tend to show that deceased violated any statute or rule. Defendant argues that it was not shown that deceased knew of the rule or practice to ring the bell or that he relied on it. The presumption obtains that he knew of the rule and relied on it, and, assuming the facts were relevant, the burden was on defendant, as a matter of defense, to show them. [Pacheco v. Railroad, 15 Fed. (2d) 467.]

IV. Defendant urges that it constituted error to permit plaintiff to introduce testimony to the effect that deceased, as the train started to its destination from Webster Groves, stated that he intended to set out the cars of dirt at Howard's Station. It is said this statement was not a part of the *res gestae*, but that it was self-serving.

We think this proof was admissible on the ground that it was a part of the *res gestae*. It was a declaration of intention prior to the occurrence of death of the declarant, and it was not self-serving, for the presumption of the love of life obtains over that of self-destruction. [22 C. J. pp. 283, 284, secs. 299, 300; State v. Young, 119 Mo. 495; State v. Decker, 321 Mo. 1163, 14 S. W. (2d) 617.] Moreover, defendant's witness, on cross-examination, without objection from defendant, was permitted to relate the same detail of facts, thus rendering the evidence non-prejudicial in any event.

V. Defendant avers that plaintiff's main instruction constituted error. As the instruction comprises two or three pages of printed matter, we consider it inadvisable to quote it. The objections to it

have been considered, in part at least, in treating of the matter of a directed verdict.

(a) It is said that, although the instruction is hypothesized on facts and inferences, the evidence is insufficient to show that, at or in the immediate vicinity of the accident, the train crew had an intention of setting off from said train any car or cars; and that no orders are shown by the testimony of any member of this crew to have been given by deceased to them about setting out any cars at this point. We cannot agree with defendant's deductions. Deceased was in charge of the train, with primary authority to determine the sidetrack upon which the cars of dirt were to be placed. The term "Howard's," as the evidence shows, comprised a district or neighborhood extending from the station proper to and including the World's Fair sidetrack. Cars of dirt had theretofore been placed on the World's Fair track. Deceased stated on leaving Webster Groves that he intended to set out the cars about Howard's. There was other evidence tending to show that the cars were to be set out on the World's Fair track, which was within Howard's neighborhood. The crew were subject to the orders of deceased, and from the evidence it may be inferred that deceased left the train to reconnoiter or throw a switch. Consequently, if deceased had determined to and was about to set out cars, his intention was the intention of the crew. However, it is immaterial whether the others knew of his intention or whether they had been given orders, for the proximate cause of the injury was moving a stationary engine without ringing the bell thereon.

(b) Defendant contends the instruction has no basis of fact on which to predicate it, because there is no evidence either proving or tending to prove, or from which it can be legitimately inferred, that it was any part of the duty of deceased to alight from the train and to proceed forward and throw a switch, or that he did in fact walk along the track for any such purpose. It is unnecessary to amplify the matter, for, in discussing the propriety of a directed verdict, we disposed of the contentions.

(c) The defendant avers that the instruction merely required the jury to find that there was a uniform method or rule not to move the engine without first having sounded the bell on the engine, whereas the petition alleges that such custom was known to and relied on by deceased. Defendant argues that there is no proof of that allegation, but we have heretofore ruled that there was proof of the rule and custom, and that the presumption obtained that such rule and custom was known to and relied upon by deceased. However, defendant argues that the instruction did not require the jury to find that deceased knew or relied upon the observance of such custom, thus omitting a causal connection between the negligence and the injury. This contention over-

looks the presumption that deceased knew of the rule and relied on it. He was in charge of the train and bound to know the operating rules, certainly in the absence of evidence that he did not know and rely on them. There is no evidence in the record tending to show that he did not know and rely on the rule in question, and the burden was on defendant to show that, if it was relevant. [Pacheco v. Railroad, 15 Fed. (2d) 467, l. c. 469.] As the presumption obtained as aforesaid, we do not think, in view of the state of the evidence, that it was error to omit from the instruction a finding that deceased knew and relied upon the rule and practice.

(d) The instruction reads in part: "If you further find and believe from the evidence that while the said Melbourne M. Koonse was on the track in advance of said train and proceeding to the point eastwardly for the purpose of throwing a switch, if you so find," etc. It is said that the instruction assumes that deceased was on the track in advance of the train for the purpose of throwing a switch. We cannot agree with the contention, for, by the words "if you so find," a finding of those facts was required of the jury before they could find for plaintiff. Moreover, prior thereto in the instruction, those facts were summarized and the jury required to find them. This assumption of fact, if it was an assumption, merely directed the jury's attention to facts that a prior portion of the instruction required them to find before plaintiff could recover. [Scharff v. Standard Tank Car Co., 214 Mo. App. 658, 264 S. W. 56.]

It is again said that the instruction submitted the question of whether the bell was rung, when all the testimony of those having any knowledge of the fact showed that it was not ringing. This contention casts aside the testimony of Creason, that he did not hear the bell ring before the train moved, which we think was substantial evidence of the fact.

It is further said that the instruction did not require the jury to find that the failure to ring the bell was the proximate cause of the injuries; or that, in failing to ring the bell, defendant's employees negligently failed to observe and follow the rule and custom relied on. The facts summarized in the instruction of their own force develop that, if the bell on the engine was not rung before starting it, such failure was the proximate cause of the casualty, and that the failure to ring it was negligence, thus obviating the necessity of the instruction requiring findings to that effect.

It follows that the judgment is affirmed. *Henwood, C.,* concurs; *Cooley, C.,* not sitting.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. *Blair, P. J.,* and *White, J.,* concur; *Walker, J., dubitante.*