MARIE McCOMBS v. OLIVER ELLSBERRY, Also Known as OLLIE ELLS-BERRY, and WALTER FELLIS, Defendants, WALTER FELLIS, Appellant.—85 S. W. (2d) 135.

Division Two, July 11, 1935.

*John T. Sluggett, Jr.,* for appellant.

494

*Albert E. Hausman* for respondent.

BOHLING, C.—From a judgment for $8000 obtained by Marie McCombs against Walter Fellis and Oliver Ellsberry for personal injuries sustained in an automobile accident, Fellis appeals.

Respondent had occasion to transact some business at the city hall in St. Louis, and appellant offered, purely as an accommodation to

respondent for which he received no remuneration, to take respondent in his Essex coach. Appellant was driving his car, with a party seated in the front seat and respondent occupying the rear seat. The accident occurred on the return trip shortly after the noon hour on July 16, 1930, at Spring Avenue and Forest Park Boulevard, public thoroughfares of the city intersecting at right angles. Spring Avenue is a north and south street, thirty to thirty-five feet in width, and Forest Park Boulevard an east and west street, with two traffic lanes, each thirty feet in width—the north lane used by westbound traffic and the south lane by eastbound traffic—with a parkway or grass plot, forty to forty-five feet in width, between said traffic ways. Oliver Ellsberry was operating a big six seven-passenger Studebaker sedan, as a service car, west along the north lane of Forest Park Boulevard, with Nadine Robinson as a passenger seated in the front seat. Appellant, going east along the south lane of Forest Park Boulevard, turned left into Spring Avenue and proceeded toward the north lane of Forest Park Boulevard. There was no traffic on the highways in question interfering with the operation of either automobile. The occupants of the Studebaker, Ellsberry while from one hundred to one hundred and twenty-five feet and Nadine Robinson while about a quarter block east of Spring Avenue, saw the Essex just prior to or at the time it was turning into Spring Avenue. While the Essex was turning into Spring Avenue, respondent observed the Studebaker quite a distance east of Spring Avenue. Appellant testified he could see one hundred and fifty feet easterly into the north lane of Forest Park Boulevard at the time he was making the turn, at which time he testified he looked for approaching traffic, and continued to look at intervals as he approached the north lane of Forest Park Boulevard, but did not see the Studebaker until it was seventy-five feet east of Spring Avenue, and the front end of his Essex was even with the south curb of the north lane (again, when it was about the center line of said lane and the rear end about even with said south curb) of Forest Park Boulevard. Witnesses placed the Studebaker as it proceeded west very close to the south curb, or a little closer to the south curb than the north curb, or in the center of the north lane of Forest Park Boulevard, traveling at a rate of speed, which did not change until the impact, of from twenty-five to thirty miles an hour, although Ellsberry testified he reduced the speed from twenty-five miles to fifteen miles an hour upon reaching Spring Avenue. Appellant's testimony indicates he traveled on the east side of Spring Avenue while witness Ellsberry testified the left wheels of the Essex were from two to five feet east of the west curb of Spring Avenue as it proceeded north toward the point of collision. The testimony indicates the Essex did not change its direction. The speed of the

Essex as it proceeded north on Spring Avenue was described as slow until the impact; appellant putting it at from five to seven miles an hour and Ellsberry at from three to five miles an hour. Ellsberry testified the Essex traveled about forty to forty-five feet while the Studebaker traveled about one hundred or one hundred and twenty-five feet. Appellant testified he increased the speed of the Essex when he first saw the Studebaker and thereafter traveled about half the length of his car before the collision. Ellsberry testified the Essex came almost, but not quite, to a stop about four or five feet from or at the south curb of the north lane; that his car was then at the east line of Spring Avenue; that he then accelerated the speed of the Studebaker from about five to eight feet; that when his car was about eight feet northeast of where appellant's car appeared to be stopping appellant's car started forward ("shot right out in front of his car") without changing its course; that he applied his brakes and swerved to the right, reducing his speed to three miles an hour and traveled about twenty feet before the impact, while the Essex was traveling about ten or twelve feet. The point of impact was placed on the highway as a little north of the center of the north lane by witness Robinson, west of the middle line (not over nine feet from the west curb) of Spring Avenue and north of the middle line of the north lane of Forest Park Boulevard by witness Ellsberry. Appellant testified the front of the Essex was even with the north curb line of Forest Park Boulevard and on the east side of Spring Avenue at the time of collision. According to some witnesses the front of the Studebaker sedan struck the rear end of the right-hand side of the Essex coach, although witness Ellsberry testified the impact was at the right front door of the Essex. Witness Ellsberry testified that after the impact the Essex continued past his car and turned over on its left side on the northwest corner of the intersection, resting on the corner of the curb, and his car was standing about six feet east from the rear of the Essex, turned a little to the north, and six to eight feet south of the north curb of Forest Park Boulevard.

Respondent submitted her case against appellant on the theory appellant could have checked the speed or changed the direction of his automobile under the humanitarian doctrine and avoided injuring respondent. Appellant contends respondent failed to make a case under that doctrine; asserting respondent was not in a position of peril until appellant's automobile entered the path of defendant Ellsberry's automobile, and not even then if Ellsberry's automobile was far enough away to have been stopped, or had its speed reduced, so as to avoid the collision. This necessitates a consideration of the evidence most favorable to respondent.

It was appellant's duty, as operator of a motor vehicle ap-

proaching the traffic way in question, to keep a lookout laterally ahead [Hornbuckle v. McCarty, 295 Mo. 162, 173, 243 S. W. 327, 329(5)], as well as in the direction he was traveling [Kaley v. Huntley, 333 Mo. 771, 777, 63 S. W. (2d) 21, 23(2)]; and, as there appears to have been no obstruction to the view from the time appellant turned north into Spring Avenue when Ellsberry's automobile was approximately one hundred to one hundred and twenty-five feet east of Spring Avenue, appellant is charged with constructive notice of the approach of Ellsberry's automobile. [Cases supra; Smith v. Public Serv. Co., 328 Mo. 979, 991, 43 S. W. (2d) 548, 553(7); Banks v. Morris & Co., 302 Mo. 254, 267, 257 S. W. 482, 484(1).] The record does not disclose any definite distance within which appellant could have checked the speed or changed the direction of his automobile. We think plaintiffs should develop such facts in the trial courts. [Cluck v. Abe, 328 Mo. 81, 88, 40 S. W. (2d) 558, 561.] ■ However, while courts may not take judicial notice of the precise distance a given automobile may be stopped under given conditions, judicial notice has been taken of the limits within which a stop could be effected, viz.: at a speed of forty-five to fifty miles an hour, within three hundred to three hundred and fifty feet [Spoeneman v. Uhri, 332 Mo. 821, 829(6), 60 S. W. (2d) 9, 12(8)] and at eight miles an hour, within forty feet [Cross v. Wears (Mo. App.), 67 S. W. (2d) 517, 518(3)]. The speed of an automobile may be more readily checked. Appellant's automobile was traveling from three to seven miles an hour. If the jury believed appellant made the turn north and traveled within two to five feet of the west curb, as testified to by Ellsberry, appellant demonstrated his ability to quickly change the direction of his automobile. Considering the testimony that appellant had control of the operation of his automobile and knew respondent occupied the rear seat; that respondent was injured by the collision; that the same occurred north of the center of the north lane of Forest Park Boulevard; and that Ellsberry's automobile approached the intersection at a uniform speed and within view while appellant traveled the width of the parkway (forty to forty-five feet) and half the width of said north lane (fifteen feet); it can not be doubted that respondent was in a position of peril at some time, and was placed in such position of peril by appellant's operation of his automobile. Appellant is in no position to assert respondent's peril was of a sudden and undiscoverable nature. Appellant must have realized danger existed when he first actually saw Ellsberry's automobile approaching for he testified he immediately accelerated the speed of his automobile. Therefore, under the facts in evidence in the instant case, we hold appellant's duty under the humanitarian doctrine did not commence, as a matter of law, only when or after ap-

pellant's automobile entered the path of Ellsberry's automobile; but that a jury might find that appellant (aware of his intention to proceed across the intersection) could and should have known, in the exercise of due care had he been alert to the situation as it developed, of the approach of Ellsberry's automobile and the impending collision, if the automobiles continued on their respective courses, in time thereafter to have checked the speed or changed the direction of his automobile at a time when such action would have been effective in order to avoid the impending collision, with its resultant injuries to respondent. [Allen v. Kessler (Mo.), 64 S. W. (2d) 630, 633(4); Homan v. Missouri Pac. Railroad Co., 335 Mo. 30, 70 S. W. (2d) 869, 877(1); Smith v. Public Serv. Co., 328 Mo. 979, 993, 43 S. W. (2d) 548, 553(5); Smith v. St. Louis-S. F. Ry. Co., 321 Mo. 105, 120, 9 S. W. (2d) 939, 944(2); Larkin v. Wells (Mo. App.), 278 S. W. 1087(6).]

So far as relates to the subject matter involved in this discussion, an instruction given on behalf of defendant Ellsberry read:

"And you are instructed that if you find and believe from the evidence in this case that the accident and injury mentioned in the evidence *was due to the sudden, unforeseen and unanticipated act of the defendant Fellis in driving or moving his automobile immediately in front of or in, the direct path of defendant Ellsberry's said motor vehicle,* and that defendant Ellsberry by the exercise of the highest degree of care did and could not see, or did not have reason to anticipate that defendant Fellis was going to suddenly drive or move his automobile immediately in front of and in the direct path of defendant's Ellsberry's said motor vehicle, if you find he did so, and that at said time defendant Ellsberry was so close to defendant Fellis' automobile that he could not, by the exercise of the highest degree of care, avoid striking by checking his speed or changing the course of his said automobile *and that plaintiff was injured solely because of the negligence of defendant Fellis,* the plaintiff cannot recover in this case against defendant Ellsberry." (Italics ours.)

Appellant contends the italicized portions of the instruction assumed, first, that appellant drove or moved his automobile immediately in front of or in the direct path of defendant Ellsberry's automobile, and termed this assumed fact as a "sudden, unforeseen and unanticipated" act of appellant; and, second, that appellant was guilty of negligence.

The foregoing portion of the instruction is complete in itself, covers the entire case, and directs a verdict for defendant Ellsberry. Instructions, covering the entire case and directing a verdict, which assume a controverted issue of material fact are not cured by other instructions properly submitting the issue [Hengelsberg v. Cushing (Mo. App.), 51 S. W. (2d) 187(2); Haynor v. Excelsior Springs.

etc., Co., 129 Mo. App. 691, 698, 108 S. W. 580, 583; Muncy v. Bevier, 124 Mo. App. 10, 15, 101 S. W. 157, 158; and, by way of analogy, Glaser v. Rothschild, 221 Mo. 180, 200, 203, 120 S. W. 1, 8, 9, 22 L. R. A. (N. S.), 1045, 1053, 1054; McLaughlin v. Marlatt, 296 Mo. 656, 672(3), 246 S. W. 548, 553(9); Wilson v. City of St. Joseph, 139 Mo. App. 557, 565, 123 S. W. 504, 507; Bright v. Thatcher, 202 Mo. App. 301, 315, 215 S. W. 788, 792(8); Stark v. Bingham (Mo. App.), 223 S. W. 946, 947(4)]; and, although given on behalf of one defendant, constitute reversible error if a controverted fact materially affecting the liability of a codefendant to plaintiff is assumed therein [Barr v. Nafziger B. Co., 328 Mo. 423, 434, 41 S. W. (2d) 559, 563(9) (holding an instruction for one defendant reversible error on account of the assumption therein of the controverted fact that the other defendant failed to stop his automobile at a street intersection) and cases there cited].

There was evidence that appellant did not operate his automobile as set forth in the instruction. The words "if you find he did so," although inaptly inserted in the instruction several lines following the portion of the instruction first questioned, contemplated a finding by the jury that appellant did so operate his automobile. However, the italicized portion of the instruction when considered alone assumed that defendant Fellis did so operate his automobile, leaving for the determination of the jury only the causal connection between appellant's assumed act and the accident and injury mentioned in the evidence. It stressed the fact of such operation of appellant's automobile by designating the movement as a "sudden, unforeseen and unanticipated" act. While this portion of the instruction is technically correct [Steigleder v. Lonsdale (Mo. App.), 253 S. W. 487, 490(4); Phelan v. Granite, etc., Pav. Co., 183 Mo. App. 531, 546, 167 S. W. 1059, 1062(3); Koonse v. Missouri Pac. Railroad Co., 322 Mo. 813, 829(d), 18 S. W. (2d) 467, 473(15)], we think it was well designed to create an unfavorable implication that appellant did operate his automobile in the manner set forth in the instruction.

The clause "and that plaintiff was injured solely because of the negligence of defendant"—absent any qualifying words—assumed some negligence on the part of appellant causing respondent's injuries. Under the facts adduced it stood admitted that respondent was injured. The contest was whether or not the negligence of the two defendants concurred in causing respondent's injuries or whether her injuries were caused by the negligence of one or the other of the defendants. That appellant was negligent was a materially controverted issue throughout the trial. This clause in the instruction left for the triers of the fact the issue of whether or not defendant Ellsberry was guilty of negligence concurring with that of appel-

lant in injuring respondent. It assumed that some negligence on the part of appellant did contribute to respondent's injuries, and if defendant Ellsberry was not negligent respondent was injured by appellant's negligence. An examination of the record in Mahany v. Kansas City Rys. Co. (Mo.), 254 S. W. 16, 21(5), 29 A. L. R. 817, 825, discloses that approved Instruction B required the jury to find that plaintiff's injuries, "if any," were caused solely by the negligence, "if any," of the codefendant. The finding of the jury in the instant case against both defendants does not justify the conclusion they disregarded the quoted portion of this instruction. While such finding warrants the conclusion the jury disregarded that portion relating to appellant's negligence being the sole cause of respondent's injuries they may have considered said clause in reaching their verdict against appellant. Only a finding for appellant would necessitate the conclusion the jury disregarded the error in the instruction. While appellant's instruction required a finding for appellant if he exercised due care and respondent's instruction predicated a recovery on a finding appellant was negligent, the instruction under discussion assumed appellant's negligence and is not in harmony with the other given instructions. The error necessitates remanding the cause as to appellant.

■ Appellant assigns error in the refusal of an instruction to the effect that if appellant and respondent were engaged in a joint enterprise respondent could not recover notwithstanding any negligent acts of appellant directly contributing to respondent's injuries. Respondent asserts the doctrine of imputed negligence arising out of a joint enterprise has no application where the operator of an automobile is sued by an occupant thereof for injuries occasioned by such operator's negligence. [Appellant cites Parsons v. Himmelsbach (Mo. App.), 68 S. W. (2d) 841, l. c. 843; Pence v. Kansas City L. Co., 332 Mo. 930, 941, 59 S. W. (2d) 633, 636; Counts v. Thomas (Mo. App.), 63 S. W. (2d) 417, and cases therein cited l. c. 419, second column.] Each of these cases involved the rights of third parties—parties not having any interest in the alleged joint enterprise—and turned on the doctrine of imputed negligence or imputed contributory negligence. As each member of a joint enterprise is a representative of the others and his negligent act, within the scope of such enterprise, is, by reason of the mutual interests of the joint adventurers, as to third parties the act of all, the issue is a material factor when third parties are involved. The relation between the joint adventurers is analogous to that existing in a limited, special or quasi-partnership. [Hobart Lee T. Co. v. Grodsky, 329 Mo. 706, 711, 46 S. W. (2d) 859, 861(2); Denny v. Guyton, 327 Mo. 1030, 1053, 1056, 40 S. W. (2d) 562, 572(14).] Assume the instant case involves a joint enterprise. Then, it in-

502

volves the right of joint adventurers *inter sese*. The gist of an action for damages by one joint adventurer against another arising out of a personal tort, not the subject matter of the joint enterprise, as in the instant case, is negligence, the joint adventurers become adversaries, their mutual interests cease to be factors in the litigation, and the rule for the imputation of negligence where third parties are involved, having its foundation in the mutuality of the interests of the joint adventurers, has no application. It follows that each joint adventurer owes the duty of due care to the other or others and that their rights, in such a tort action *inter sese*, are governed by the rules of law applying to negligence cases. [O'Brien v. Woldson, 149 Wash. 192, 194, 270 Pac. 304, 305, 62 A. L. R. 436, 439, note 1. c. 442(IV); 5-6 Huddy on Automobiles (9 Ed.), p. 291, note 7, and cases cited; 20 R. C. L. 931, secs. 148-149; 47 C. J. 811, sec. 261; Gilliam v. Loeb, 131 Mo. App. 70, 79, 109 S. W. 835, 837.] To uphold appellant's contention would permit one joint adventurer while engaged in the joint enterprise to tortiously injure his coadventurer with immunity. Such is not the law.

Therefore, there is no occasion to consider respondent's authority or lack of authority to control the operation of appellant's automobile or appellant (factors considered in the cases cited by appellant; and see Anderson v. Asphalt D. Co. (Mo.), 55 S. W. (2d) 688, 694(10); Applebee v. Ross (Mo.), 48 S. W. (2d) 900, 902(6), 82 A. L. R. 288, 293), or the rule that under the humanitarian doctrine contributory negligence constitutes no defense.

■ The court correctly refused appellant's instruction to the effect, among other things, that should the jury believe appellant was driving his automobile in the intersection in question in a northwardly direction before the automobile of the defendant Ellsberry reached and entered said intersection, then appellant had the right-of-way or right to proceed upon and across Forest Park Boulevard. While the instruction does not in express terms direct a verdict for the defendant, its effect is that under the stated facts nothing else would follow. The mere fact that the operator of a motor vehicle reaches and enters an intersection prior to the entry of another automobile therein does not in and of itself give such operator the right to proceed across the intersection in any event; and where it becomes an issue of fact for a jury to determine whether or not in approaching or proceeding across an intersecting highway the operator of the motor vehicle first reaching or entering upon the intersection, in the exercise of due care, might have avoided a collision and resultant injuries, an instruction to the effect that irrespective of the existing conditions such operator has a right to proceed across the intersection is erroneous. [Sullivan v. Union E. L. & P. Co., 331 Mo. 1065, 1075(2), 56 S. W. (2d) 97, 101, 102(5);

Brooks v. Menaugh (Mo.), 284 S. W. 805; Schneider v. Hawks (Mo. App.), 211 S. W. 681(1); Freeman v. Green (Mo. App.), 186 S. W. 1166, 1168(5); Parsons v. Himmelsbach (Mo. App.), 68 S. W. (2d) 841, 845(3).]

The foregoing applies to the intersection of the north lane of Forest Park Boulevard and Spring Avenue. Forest Park Boulevard is a street with two traffic ways, each thirty feet in width, with a parkway of from forty to forty-five feet in width between. In the application of the law with reference to the operation of motor vehicles upon the highways of this State each of said traffic ways is to be treated as a separate intersecting highway.

The occasion for all alleged errors not hereinbefore specifically discussed recurring upon a retrial may be prevented so easily by respondent without affecting her rights that any discussion of such issues is unnecessary.

Defendant Ellsberry has not appealed. The finding of the jury is final as to him. Appellant does not present any issue as to the amount of damages awarded. The error necessitating a retrial only affects the issue of appellant's liability. Following the decision of Frank, J., in Hoelzel v. Chicago, Rock Island and Pacific Railway Company et al., 337 Mo. 61, 85 S. W. (2d) 126 (overruling Neal v. Curtis, 328 Mo. 389, 421, 41 S. W. (2d) 543, 558(34), and Barr v. Nafziger Baking Co., 328 Mo. 423, 436, 41 S. W. (2d) 559, 565(13), on this issue), respondent should be permitted to hold the amount of the verdict; and the judgment is reversed and the cause is remanded with directions to the trial court to hold in abeyance the verdict as to both liability and amount of damages against defendant Oliver Ellsberry until the case is disposed of as to the liability of appellant, Walter Fellis, and, after retrial on the issue of the liability of appellant, enter judgment for the amount of the verdict held in abeyance against all defendants finally held liable. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by Bohling, C., is adopted as the opinion of the court. All the judges concur.