Patricia BLACK, Appellant,

v.

Christopher Alan STEVENS and David Willard Black, Respondents.

No. 20605.

Missouri Court of Appeals,
Southern District,
Division Two.

May 24, 1996.

Motion for Rehearing and Transfer to Supreme Court Denied June 14, 1996.

Application to Transfer Denied
Aug. 20, 1996.

John C. Banning, Fitzsimmons, Schroeder, Nelson & Reynolds, Springfield, for appellant.

Craig A. Smith, Daniel, Clampett, Powell & Cunningham, Springfield, for respondent Black.

No appearance for respondent Stevens.

CROW, Judge.

The primary issue in this appeal is whether the negligence of a joint venture driver, adjudged sixty percent at fault for an accident in which his joint venture passenger (adjudged forty percent at fault) was injured, is imputable to the passenger, thereby barring her from recovering damages from the driver.

Patricia Black sued Christopher Alan Stevens and David Willard Black, alleging she was injured July 12, 1989, while riding on a trailer attached to a Ford motor vehicle operated by David.[1] Patricia pled that a Chevrolet motor vehicle operated by Stevens struck the trailer, inflicting her injuries, and that the collision was a direct and proximate result of the negligence of both Stevens and David.

■ Stevens' answer, *inter alia:* (a) denied negligence on his part, (b) averred Patricia was negligent in riding on the trailer, and (c) pled that a joint venture[2] existed between Patricia and David, hence any negligence by David is imputed to Patricia "so that any recovery must be diminished by whatever percentage of fault is attributable to [David]."

In Instruction 9, the trial court told the jurors they must find Patricia responsible for any percentage of fault they assessed against David if they believed David was operating the Ford "as part of a joint venture with [Patricia]."[3]

The verdict included this: "On the claim of ... Patricia ... for personal injury, we, the undersigned jurors do ... find Patricia ... responsible for any percentage of fault assessed to David...."

The jury assessed these percentages of fault:

| | |
|---|---|
| Stevens | 0; |
| David | 60; |
| Patricia | 40. |

The jury found the total amount of Patricia's damages, disregarding any fault on her part, to be $30,000.

The judgment entered by the trial court included an adjudication that Patricia "is responsible for the percentage of fault assessed to ... David...." The judgment awarded Patricia nothing and taxed costs against her.

Patricia appeals. Her sole point relied on is:

"**The trial court erred in imputing [David's] 60% negligence to [Patricia] and finding [her] 100% at fault because [Patricia] versus ... David ... is joint**

---

**1.** For brevity and clarity, we henceforth refer to David Willard Black as "David," to Patricia Black as "Patricia," and to Christopher Alan Stevens as "Stevens." We intend no disrespect.

**2.** The essential elements of a joint venture are: (1) an agreement, express or implied, among the members of a group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interests in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal

right of control. *McSorley v. Hauck,* 883 S.W.2d 562, 566[2] (Mo.App. S.D.1994), *citing Manley v. Horton,* 414 S.W.2d 254, 260 (Mo.1967).

**3.** No party filed a transcript on appeal, thus the record consists of only a legal file and a supplemental legal file. We assume Instruction 9 was tendered by Stevens, but we cannot confirm that assumption because, contrary to Rule 70.02(a) and (e), Missouri Rules of Civil Procedure (1995), neither Instruction 9 nor the record—such as it is—shows who tendered Instruction 9.

venturer versus joint venturer so imputation of negligence is inapplicable as a matter of law in that the infliction of injury is beyond the scope of any lawful joint venture."

Patricia argues that the portion of the judgment imputing David's percentage of fault to her should be reversed, and that this Court should award her "judgment against ... David ... for $18,000 plus costs."

Inasmuch as Patricia assigns no error regarding the portion of the judgment exonerating Stevens from liability, Stevens has filed no brief.

David, in his brief, maintains the trial court did not err, as "the trial court was required to reduce the jury's verdict to a judgment." David emphasizes that Patricia does not accuse the trial court of error in giving Instruction 9, nor does Patricia assign error regarding the part of the verdict finding her responsible for the percentage of fault assessed to David.

Patricia concedes she assigns no error regarding Instruction 9. She asserts the instruction was proper because the existence of a joint venture between her and David would have affected her claim against Stevens if the jury had assessed a percentage of fault to him (and also to David). We illustrate that later in this opinion.

Resolution of Patricia's claim of error starts with *McCombs v. Ellsberry*, 337 Mo. 491, 85 S.W.2d 135 (1935). That case, like this one, involved a two-vehicle accident. The injured party was a passenger in an Essex, which was struck by a Studebaker. The passenger sued both drivers and obtained a judgment against both. The Essex driver appealed; the Studebaker driver did not. The Essex driver assigned error in the trial court's refusal to instruct the jury that if he and the passenger were engaged in a joint enterprise, the passenger could not recover from him even though his negligence directly contributed to the passenger's injuries. 85 S.W.2d at 140. The Supreme Court rejected the claim of error, saying:

"[The passenger] asserts the doctrine of imputed negligence arising out of a joint enterprise has no application where the operator of an automobile is sued by an occupant thereof for injuries occasioned by such operator's negligence.... [The cases cited by the Essex driver] involved the rights of third parties—parties not having any interest in the alleged joint enterprise—and turned on the doctrine of imputed negligence or imputed contributory negligence. As each member of a joint enterprise is a representative of the others and his negligent act, within the scope of such enterprise, is, by reason of the mutual interests of the joint adventurers, as to third parties the act of all, the issue is a material factor when third parties are involved.... Assume the instant case involves a joint enterprise. Then, it involves the right of joint adventurers inter sese. The gist of an action for damages by one joint adventurer against another arising out of a personal tort, not the subject-matter of the joint enterprise, as in the instant case, is negligence, the joint adventurers become adversaries, their mutual interests cease to be factors in the litigation, and the rule for the imputation of negligence where third parties are involved, having its foundation in the mutuality of the interests of the joint adventurers, has no application. It follows that each joint adventurer owes the duty of due care to the other or others and that their rights, in such a tort action inter sese, are governed by the rules of law applying to negligence cases.... To uphold [the Essex driver's] contention would permit one joint adventurer while engaged in the joint enterprise to tortiously injure his coadventurer with immunity. Such is not the law."

*Id.* at [12, 13].

One could gather from *McCombs* that, assuming Patricia and David were joint venturers, his negligence is imputed to her in her claim against Stevens. However, *McCombs* did not decide that. The issues on appeal in *McCombs* were between the Essex passenger and its driver, who claimed he and the passenger were joint venturers. All *McCombs* decided was that if they were, the passenger could nonetheless recover from the driver if he was negligent and such negligence directly contributed to cause her injuries.

However, the hint in *McCombs* that if the Essex passenger and driver were joint venturers, any negligence of the driver would be imputed to the passenger in her claim against the Studebaker driver is consistent with 7A Am.Jur.2d, Automobiles and Highway Traffic § 758 (1980), which says:

"Where an occupant of a motor vehicle is engaged in a joint enterprise with the driver and is injured by reason of the concurrent negligence of the driver and a third person, the driver's negligence is imputable to such occupant and will bar or diminish a recovery by him against the third person."

We infer the trial court based Instruction 9 on the above rule. We reach that conclusion because the trial court's instructions gave the jury no reason other than joint venture for finding Patricia responsible for any percentage of fault assessed to David. The effect Instruction 9 could have had on the judgment if the jury had assessed some percentage of fault to Stevens—and also to David and Patricia, as the jury did—is set forth below.

In *Cornell v. Texaco, Inc.*, 712 S.W.2d 680 (Mo. banc 1986), the Supreme Court of Missouri explained that *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc 1983), adopted "the pure comparative fault doctrine." *Cornell*, 712 S.W.2d at 682. If multiple defendants are involved, that doctrine reduces the plaintiff's award "in the proportion that the plaintiff's share of negligence bears to the total negligence of all the parties[.]" *Id.* at [1].

Thus if, in the instant case, the jury had assessed 10 percent fault to Stevens, 40 percent fault to Patricia, and 50 percent fault to David, imputing David's fault to Patricia under Instruction 9 would apparently have limited her recovery from Stevens to $3,000. That is because Patricia's damages ($30,000 found by the jury) would have been reduced by 90 percent (Patricia's own 40 percent of the fault plus David's 50 percent imputed to her).

However, absent a joint venture and using the same hypothetical percentages of fault, Patricia could apparently have recovered $18,000 from Stevens (her $30,000 damages reduced by her 40 percent of the fault).[4]

We emphasize that everything in the two preceding paragraphs (and footnote 4) is hypothetical, as the jury assessed no fault to Stevens. We assume, but need not decide, that what we have said in that segment of the opinion is correct. The sole purpose of that segment is to illustrate the effect Instruction 9 could have had on Patricia's claim against Stevens had the jury assessed the hypothetical percentages of fault.

Because the jury assessed no fault to Stevens, the joint venture issue submitted in Instruction 9 turned out to be academic in regard to Patricia's claim against him. However, joint venture, under the trial court's theory of the case as we have divined it, was a live issue until the jury exonerated Stevens.

The trial court's instructions did not tell the jury that a finding under Instruction 9 that Patricia was responsible for any percentage of fault assessed to David would affect only Patricia's claim against Stevens. Whether the trial court should have done so is not an issue we must decide in this appeal.

4. An alert reader will realize that imputing the negligence of a joint venture driver to his joint venture passenger in the passenger's claim against another driver could produce a bizarre result when all three are assessed a percentage of fault. Using the hypothetical percentages in the above illustration (10, 40 and 50), we have seen that Patricia's recovery against Stevens would apparently have been limited to $3,000. However, under *McCombs*, 85 S.W.2d at 140[12, 13], using the same hypothetical percentages, Patricia apparently could have recovered $18,000 from David (her $30,000 damages reduced by her 40 percent of the fault). Following the hypothetical illustration to its inevitable conclusion, the judgment would have awarded Patricia $3,000 against Stevens and $18,000 against David.

Such a result would arguably offend the general rule that all joint or concurrent tort-feasors adjudicated liable to a claimant are jointly and severally liable for the entire judgment, *Berry v. Kansas City Public Service Co.*, 343 Mo. 474, 121 S.W.2d 825, 833[13] (1938), and apportionment of relative fault between defendants has no effect on a plaintiff's right to collect the entire judgment from any defendant, *Elfrink v. Burlington Northern Railroad Co.*, 845 S.W.2d 607, 615[24] (Mo.App. E.D.1992), citing *Missouri Pacific Railroad Co. v. Whitehead & Kales Co.*, 566 S.W.2d 466, 474 (Mo. banc 1978). We need not attempt to solve that conundrum, as everything in the illustration is fictional. However, some court in the future may have to do so.

However, we observe that such advice might have distracted the jury from the task assigned by Instruction 9: deciding whether Patricia and David were joint venturers. We perceive no reason for the jurors to know how their finding on that issue would affect the judgment the trial court would ultimately enter.

Furthermore, we find no pattern instruction in MAI[5] telling a jury that a finding on one of the issues submitted to it will, or may (depending on the finding), affect the plaintiff's claim against one defendant differently than the plaintiff's claim against another defendant, and explaining all the ramifications. Because of the peril in creating a not-in-MAI instruction, we can understand why the trial court did not attempt that feat here.

Nonetheless, David insists that the trial court, in entering judgment on Patricia's claim against David, was powerless to disregard the jury's finding that Patricia is responsible for any percentage of fault assessed to David. In considering that contention, we underscore again that the trial court's instructions gave the jury no reason other than joint venture for finding Patricia responsible for any percentage of fault assessed to David. It is thus evident that the segment of the verdict finding Patricia responsible for any percentage of fault assessed to David was based on a determination by the jury that she and he were joint venturers.

■ Because they were joint venturers, we must ascertain whether, at the time Patricia was injured, Missouri law imputed David's negligence to her in her claim against him. If the answer is yes, the portion of the judgment declaring Patricia responsible for the percentage of fault assessed to David is correct, hence we do not reach the question of whether the trial court was authorized to disregard that segment of the verdict.

■ As we have seen, *McCombs* held the negligence of one joint venturer is not imputed to another joint venturer in a claim by the latter against the former for personal injury caused by the former's negligence. 85 S.W.2d at 140[13]. We find no indication that *McCombs* has ever been overruled. However, *McCombs* was decided long before the advent of Missouri's "pure comparative fault doctrine." Under that doctrine, any contributory fault chargeable to a claimant diminishes proportionately the amount awarded the claimant as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery. *Gustafson,* 661 S.W.2d at 15, 18.

In determining whether that doctrine changes the rule in *McCombs,* we note that *McCombs* condemns the idea that one joint venturer is immune from liability for injuring a fellow joint venturer. Imputing David's negligence to Patricia in the instant case produces the result condemned in *McCombs,* as David's percentage of fault added to Patricia's percentage of fault totals 100 percent. Obviously, reducing Patricia's $30,000 damages by 100 percent leaves her nothing.

David does not argue that Missouri's comparative fault doctrine alters *McCombs'* holding that the negligence of a joint venturer which causes injury to another joint venturer is not imputed to the injured venturer in his claim against the negligent venturer.[6] Indeed, David ignores *McCombs.* David's sole argument is that the trial court, in entering judgment on Patricia's claim against David, was compelled by the verdict to impute David's negligence to Patricia.

---

5. *Missouri Approved Jury Instructions* (4th ed. 1991).

6. Although cases like this one are surprisingly rare, *Gilmer v. Carney,* 608 N.E.2d 709 (Ind.App. 3 Dist.1993), discusses "the purpose and application of the doctrine of imputed negligence through joint enterprise." The opinion explains: "It is limited to actions against a third party, as where an injured passenger may have his recovery against a third party diminished or defeated because of negligence on the part of his own driver with whom he is engaged in a joint enterprise.... That is to say, it has no application where one member of a joint enterprise riding as a passenger in an automobile seeks to recover for injuries sustained as the result of the negligence of the driver, who happens to also be a member of the enterprise.... The injured party will not be denied all remedy merely because of the existence of the relationship." *Id.* at 711 (footnote omitted).

■ We hold *McCombs* is still viable insofar as it establishes that an injured joint venturer is not chargeable with the negligence of a fellow joint venturer when the injured venturer makes a claim against the negligent venturer for the injury. Consequently, under Missouri law, in Patricia's claim against David she was not chargeable with any percentage of fault assessed to him.

■ Having decided that, we must determine whether the trial court, in entering judgment on Patricia's claim against David, was—as David insists—powerless to disregard the jury's finding that she is responsible for any percentage of fault assessed to him. We have examined the cases cited by David and have found nothing in them supporting that hypothesis.

In *Mosher v. Levering Investments, Inc.*, 806 S.W.2d 675 (Mo. banc 1991), cited by both sides, a verdict set forth the amount the jury found the defendant owed the plaintiffs. The trial court, applying a pertinent statute, entered judgment doubling the verdict and awarding additional relief. On appeal, the defendant complained that the judgment "went beyond the verdict." *Id.* at 676. The Supreme Court disagreed, and affirmed the judgment.

In the instant case, the trial court's instructions assigned the jury three duties: (1) deciding whether, under Instruction 9, Patricia and David were joint venturers, thereby making her responsible for any percentage of fault assessed to him, (2) assessing percentages of fault, if any, to Stevens, David and Patricia, and (3) determining Patricia's damages, disregarding any fault on her part.

Once the jury decided those issues, we find no reason to prevent the trial court from applying the law to the jury's findings and entering the correct judgment on Patricia's claim against Stevens and her claim against David.

MAI recognizes instances where a trial court takes a finding in a jury verdict, applies the controlling law, and enters the correct judgment. One such example appears in the instant case. In Instruction 10 (not previously mentioned), evidently based on MAI

37.03 [1986 New], the trial court told the jury, among other things:

> "In determining the total amount of plaintiff's damages you must not reduce such damages by any percentage of fault you may assess to plaintiff. *The judge will compute plaintiff's recovery by reducing the amount you find as plaintiff's total damages by any percentage of fault you assess to plaintiff.*" (Emphasis added.)

Inasmuch as the trial court was not compelled to award Patricia the damages fixed by the verdict, but was instead required to reduce that amount by any percentage of fault assessed to her, we hold the trial court, in entering judgment on Patricia's claim against David, was likewise not compelled to apply the jury's finding that she was responsible for any percentage of fault assessed to him. While that finding—obviously based on a determination under Instruction 9 that she and he were joint venturers—might have affected her claim against Stevens had the jury assessed a percentage of fault to him (as hypothetically illustrated earlier in this opinion), such finding, under *McCombs,* had no effect on her claim against David. In that claim, Patricia was chargeable with only her own percentage of fault, not David's.

We therefore hold the trial court, in the portion of the judgment adjudicating Patricia's claim against David, erred by declaring her responsible for the percentage of fault assessed to him.

■ Rule 84.14 empowers an appellate court to "give such judgment as the court ought to give," thereby ending the litigation if the record permits it. *Hill, Lehnen & Driskill v. Barter Systems, Inc.*, 707 S.W.2d 484, 487[7] (Mo.App. W.D.1986). We can do so here, even on the astonishingly abbreviated record.[7]

The portion of the judgment exonerating Stevens from liability to Patricia is affirmed. The portion of the judgment pertaining to Patricia's claim against David is corrected by: (a) vacating the adjudication that Patricia is responsible for the percentage of fault assessed to David, and (b) granting Patricia

---

7. Footnote 3, *supra.*

judgment against David for $18,000 (Patricia's $30,000 damages fixed by the jury, reduced by her 40 percent of the fault). Costs are taxed against David.

SHRUM, C.J., and PARRISH, J., concur.